1  Manatt, Phelps & Phillips, LLP
   GERALD A. MARGOLIS (Bar No. CA 059010)
2  E-mail: gmargolis@manatt.com
   CRAIG S. RUTENBERG (Bar No. CA 205309)
3  E-mail: crutenberg@manatt.com
   11355 West Olympic Boulevard
4  Los Angeles, CA 90064-1614
   Telephone: (310) 312-4000
5  Facsimile: (310) 312-4224

6  Mozley, Finlayson & Loggins LLP
   CHRISTOPHER E. PARKER (*admitted pro hac vice*)
7  JESSICA C. LAWRENCE (*admitted pro hac vice*)
   One Premier Plaza, Suite 900
8  5605 Glenridge Drive
   Atlanta, GA 30342
9
   *Attorneys for Plaintiff*
10 DAN HOLLINGS

11

12                    UNITED STATES DISTRICT COURT

13                    CENTRAL DISTRICT OF CALIFORNIA

14

15 DAN HOLLINGS, an individual          Case No. CV08-3024 DDP (PJWx)

16              Plaintiff,              RESPONSE IN OPPOSITION TO
                                        DEFENDANTS' MOTION TO
16       vs.                           TRANSFER CASE TO NORTHERN
                                        DISTRICT OF ILLINOIS
17
   RHONDA BYRNE, an individual; TS
18 PRODUCTION, LLC, a limited
   liability company of unknown
19 domesticity, THE SECRET, LLC a       Date:    July 14, 2008
   Delaware limited liability company   Time:    10:00 a.m.
20 aka TS HOLDINGS, LLC, TS             Room:    3-2nd Floor
   PRODUCTION HOLDINGS, LLC, a
21 Hungarian limited liability company; Hon. Dean D. Pregerson
   TS MERCHANDISING LTD., a
22 British Virgin Islands Corporation; and
   PRIME TIME U.S., INC., a Delaware
23 Corporation,

24              Defendants.

25

26

27

28

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

41275652.1                              OPPOSITION TO DEFENDANTS'
                                        MOTION TO TRANSFER

# TABLE OF CONTENTS

**Page**

I.    STATEMENT OF FACTS ............................................................... 1

II.   ARGUMENT AND AUTHORITY ............................................................... 3

    a.    Defendants' Motion should be disregarded due to Defendants failure to adhere to Local Rule 7.3 ...................................................... 3

    b.    The first-to-file rule does not compel a transfer ................................ 5

    c.    Defendants' Motion should be denied based upon Defendants' bad faith, anticipatory filing and forum shopping ................................ 5

        i.    The Illinois Litigation was filed as an anticipatory suit following the failed settlement negotiations ................................ 6

        ii.   The Illinois Litigation is a classic case of forum shopping ........ 7

    d.    Defendants' Motion should be denied because the parties and issues in this case are not the same as the parties and issues in the Illinois litigation ............................................................. 9

        i.    The parties in the instant litigation are not the same as the parties in the Illinois Litigation ............................................ 9

        ii.   The issues in the lawsuits are materially different ................... 11

    e.    Defendants' Motion should be stayed because the Illinois litigation is subject to a pending motion to dismiss ........................... 12

III.  CONCLUSION ................................................................... 13

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

i

# TABLE OF AUTHORITIES

**Page**

## CASES

*Alltrade, Inc. v. Uniweld Products, Inc.,*
    946 F.2d 622 (1991)................................................................. 5, 6, 7, 13

*Google, Inc. v. American Blind & Wallpaper Factory, Inc.,*
    2004 U.S. Dist. LEXIS 27601, *9 (C.D. Cal. 2004) ...................................... 5, 6

*L. Cohen Group v. Herman Miller, Inc.,*
    2006 U.S. Dist. LEXIS 2301 at *5-7 (N.D. Cal. 2006) ............................... 10, 11

*Nova Wines Inc. v. Adler Fels Winery,*
    2007 U.S. Dist. LEXIS 14910, *9 (N.D. Cal. 2007) ................................. 10, 11

*Schmitt v. JD Edwards World Solutions Co.,*
    2001 U.S. Dist. LEXIS 7089 (N.D. Cal. 2001) ...................................... 6, 7, 13

*Tempco Electric Heather Corp. v. Omega Engineering, Inc.,*
    819 F.2d 746 (7th Cir 1998).......................................................................7

*Ward v. Follett Corp.,*
    158 FRD 645 (N.D. Cal. 1994).......................................................................9

*Xoxide, Inc. v. Forde Motor Co.,*
    448 F. Supp. 2d 1188 (C.D. Cal. 2006) .............................................................6

## RULES

Local Rule 7.3 ................................................................................ 4, 13

41291518.1

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER CASE TO THE NORTHERN DISTRICT OF ILLINOIS**

Dan Hollings, Plaintiff in the above-styled action, files this Response in Opposition to Defendants' Motion to Transfer, respectfully showing the Court as follows:

## I.    STATEMENT OF FACTS

This action focuses directly upon the required distribution of profits from the *The Secret* movie and its supporting website. Prior to its launch, Defendant Byrne and her company Prime Time made a binding agreement which entitled Plaintiff, Dan Hollings, to ten percent of the gross proceeds from *The Secret's* Website in exchange for extensive internet and marketing services provided by Mr. Hollings. *The Secret* was conceived by Defendant Byrne, an Australian citizen who now resides in California. All of the internet and marketing services performed by Mr. Hollings pursuant to his agreement with Defendant Byrne were performed out of his home in Arizona. Subsequent to making the agreement with Mr. Hollings, Defendant Byrne established multiple corporate entities around the globe, including those named as Defendants herein, which now apparently control or receive some or all of the proceeds to which Mr. Hollings is entitled.

Defendant Byrne and the other Defendants in this action have failed to compensate Mr. Hollings in accordance with the agreement and, as such, are in breach of their obligations. Prior to the inception of the two cases at issue in this motion, Dan Hollings spent months attempting to resolve the instant dispute with Defendant Byrne and *The Secret*. On October 22, 2007, the parties engaged in mediation in Arizona. The mediation was unsuccessful. On or around October 28, 2007, immediately following the mediation, Defendants contacted Mr. Hollings and requested an in-person meeting with Mr. Hollings, which was scheduled to occur and, indeed did occur on November 28, 2007 in Tucson, Arizona. At the meeting, an additional settlement offer for Mr. Hollings' consideration was extended with an

1   expiration date of December 14, 2007.    (Correspondence between counsel for

2   Defendants and prior counsel for Mr. Hollings regarding the settlement conference

3   is attached hereto as Exhibit A).

4       After scheduling the settlement conference, but prior to the conference itself,

5   and in anticipation of a threatened lawsuit from Mr. Hollings, TS Merchandising

6   and TS Production rushed to file suit in the United States District Court for the

7   Northern District of Illinois against Mr. Hollings and WebServices, LLC, an entity

8   established by Mr. Hollings at the direction of Defendants in order to receive the

9   profits at issue in this litigation.    TS Merchandising and TS Production also sued

10   Loretta Hollings, Mr. Hollings' wife, although she has no involvement with the

11   agreement at issue in this case and no connection with *The Secret*.    The Illinois

12   action is styled <u>TS Merchandising Ltd., a British Virgin Islands corporation, and TS</u>

13   <u>Production LLC, a Hungarian limited liability company, vs. Dan and Loretta</u>

14   <u>Hollings, Arizona residents, and Web Services, LLC, an Arizona limited liability</u>

15   <u>company, Case No. 07 C 6518.</u> (the "Illinois Litigation").

16       Five (5) out of seven (7) of the Defendants in this case are not parties to the

17   Illinois Litigation.    Specifically, none of the key figures at issue herein, Rhonda

18   Byrne, The Secret, LLC, TS Holdings, LLC, TS Production Holdings, LLC and

19   Prime Time U.S., Inc. are parties to the Illinois Litigation.    Similarly, Loretta

20   Hollings and WebServices, who are parties in the Illinois litigation, are not parties

21   to the instant action.

22       Further, the issues in the Illinois Litigation are distinct from the issues in the

23   present litigation.    The Illinois Litigation involves claims for trademark

24   infringement, cybersquatting, unfair competition, false advertising, trademark

25   dilution and a claim for declaratory relief.    The instant action is based wholly on

26   Defendant Byrne's and the other Defendants' breach of the obligation to pay Mr.

27   Hollings for the extensive services he performed.    The instant action involves

28   claims for breach of contract, fraud in the inducement, unfair business practices and

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41275652.1                                    2                    RESPONSE IN OPPOSITION TO
                                                                   MOTION TO TRANSFER

1    promissory estoppel, none of which are present in the Illinois Litigation.

2    In addition to the fact that the two actions are distinct in parties and issues,

3    there is a likelihood that the Illinois Litigation will be dismissed for lack of personal

4    jurisdiction.  Mr. Hollings, together with WebServices and Loretta Hollings have

5    filed a motion to dismiss the Illinois Litigation for lack of personal jurisdiction.

6    (*See* Ex. B.)  The motion has been fully briefed and is awaiting a ruling from the

7    Illinois District Court.  As stated in that motion, Mr. Hollings is an Arizona resident

8    with almost no contact with Illinois.  None of the conduct allegedly giving rise to

9    the claims in the Illinois Litigation occurred in Illinois.  Defendants' entire

10   purported basis for asserting jurisdiction in Illinois is based upon a series of e-mail

11   correspondence and approximately 16 invoices that were emailed to The Secret's

12   Illinois Office pursuant to direct instructions from Defendants after the formation of

13   the contract.  Simply put, Mr. Hollings does not have sufficient contacts with

14   Illinois to subject him to personal jurisdiction.

15   The true reason that Defendants filed the Illinois Litigation was to force Mr.

16   Hollings into a forum far from his residence and in an effort to beat him to the

17   courthouse while a settlement offer was pending.  It is readily apparent that

18   improper forum shopping is a tactic being used by Defendants in order to deprive

19   Mr. Hollings, and other plaintiffs aggrieved by Defendants, of their right to select

20   an appropriate forum to litigate their disputes.

21   Now, in a continuation of these improper tactics, Defendants have filed the

22   instant motion to transfer.  Because the parties and issues in this case are clearly

23   distinct from the parties and issues in the Illinois Litigation, and because

24   Defendants' conduct exhibits bad faith anticipatory litigation and forum shopping,

25   the Court should deny Defendants' motion to transfer the instant case.

## II.    ARGUMENT AND AUTHORITY

### a.    Defendants' Motion should be disregarded due to Defendants failure to adhere to Local Rule 7.3.

1    Local Rule 7.3 of this Court requires that "counsel contemplating the filing

2   of any motion shall first contact opposing counsel to discuss thoroughly, *preferably*

3   *in person,* the substance of the contemplated motion and any potential resolution."

4   L.R. 7-3 (emphasis supplied). According to Rule 7-3, said discussion is required to

5   take place at least five (5) days prior to the filing of the motion at issue.  L.R. 7-3.

6    In filing their Motion, Defendants blatantly disregarded the provisions of

7   Local Rule 7.3. On June 9, 2008, the very same day on which Defendants filed their

8   Motion, counsel for Defendants, Christopher Cedillo, left a voice mail message for

9   counsel for Plaintiff, Christopher Parker, stating that the purpose of the call was to

10   adhere to Local Rule 7.3.   Mr. Parker was not available on June 9, 2008 and did

11   not receive the voicemail message until after the motion had been filed.   Notably,

12   Plaintiff's other counsel of record, Jessica Lawrence, was in the office and available

13   on June 9, 2008 and did not receive any communication from counsel for

14   Defendants.

15    Defendants' failure to adhere to the provisions of Local Rule 7-3 is shown on

16   the face of Defendants' own certificate which states that the "motion is made

17   following the attempted conference of counsel pursuant to L.R. 7-3 which took

18   place on June 9, 2008."   Directly below, the certificate is signed and dated by

19   counsel on June 9, 2008.  Clearly, Defendants were well aware of the requirements

20   of Local Rule 7-3 but chose to disregard said requirements in favor of filing the

21   instant motion without the fulfilling the obligation to confer with opposing counsel

22   as required by this Court.

23    Plaintiffs were served with the Complaint on May 21, 2008 and had ample

24   opportunity to fulfill their obligations. Plaintiff respectfully submits that Defendants

25   have exhibited a complete and intentional disregard of the obligations specifically

26   set forth in Local Rule 7-3.  The Court should decline to consider the instant motion

27   based upon Defendants' intentional disregard for the Local Rules of this Court.

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41275652.1                                    4            RESPONSE IN OPPOSITION TO
                                                            MOTION TO TRANSFER

1          **b.**     **The first-to-file rule does not compel a transfer.**

2          "The first-to-file rule may be invoked when a complaint involving the same

3 parties and issues has already been filed in another district". ***Alltrade, Inc. v.***

4 ***Uniweld Products, Inc.,*** 946 F.2d 622 (1991). The first-to-file rule was developed

5 "to serve the purpose of promoting efficiency well and should not be disregarded

6 lightly". ***Google, Inc. v. American Blind & Wallpaper Factory, Inc***., 2004 U.S.

7 Dist. LEXIS 27601, *9 (C.D. Cal. 2004). "Nonetheless, it is not a rigid or inflexible

8 rule to be mechanically applied, but rather is to be applied with a view to the

9 dictates of sound judicial administration." ***Id***. "The circumstances under which an

10 exception to the first-to-file rule typically will be made include bad faith,

11 anticipatory suit, and forum shopping." ***Id***. The most basic aspect of the first-to-file

12 rule is that it is discretionary; "an ample degree of discretion, appropriate for

13 disciplined and experienced judges, must be left to the lower courts." ***Alltrade, Inc.***

14 946 F.2d at 628.

15          **c.**     **Defendants' Motion should be denied based upon Defendants' bad**

16                 **faith, anticipatory filing and forum shopping.**

17          The Illinois litigation, together with the instant motion, are classic examples

18 of improper forum shopping. This is a tactic which has been repeatedly used by

19 these Defendants in order to force potential plaintiffs to litigate disputes in distant

20 jurisdictions. The Court should find that the Illinois litigation was filed in bad faith

21 anticipation of litigation and decline to apply the first-to-file rule.

22          As discussed below, Plaintiff does not agree that the instant case falls within

23 the "first to file" rule because the parties and issues herein are substantially

24 dissimilar to the parties and issues in the Illinois Litigation. However, even if the

25 parties and issues were substantially similar, California federal courts have

26 repeatedly recognized that an exception will typically be made to the rule where the

27 first litigation "exhibits bad faith, anticipatory suit and forum shopping." ***Google,***

28 ***Inc. v. American Blind & Wallpaper Factory, Inc***., 2004 U.S. Dist. LEXIS 27601

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41275652.1             5        RESPONSE IN OPPOSITION TO
MOTION TO TRANSFER

1  (C.D. Cal. 2004).

2          **i.**     **The Illinois Litigation was filed as an anticipatory suit**

3                **following the failed settlement negotiations.**

4        One of the most telling signs of anticipatory litigation is when that litigation

5  comes in the form a declaratory judgment action.    Multiple cases exist which

6  evidence the Court exercising its discretion in <u>refusing</u> to employ the first-to-file

7  rule involve facts where the first-filed action involved a declaratory judgment

8  claim. See *Id.; Xoxide, Inc. v. Forde Motor Co*., 448 F. Supp. 2d 1188 (C.D. Cal.

9  2006) ("Where a declaratory judgment action is filed in anticipation of an

10  infringement action, the infringement action should proceed even when filed

11  later."); *Schmitt v. JD Edwards World Solutions Co*., 2001 U.S. Dist. LEXIS 7089

12  (N.D. Cal. 2001). "Where a declaratory judgment action has been triggered by a

13  cease and desist letter, equity militates in favor of allowing the second filed action

14  to proceed to judgment rather than the first." *Id.*  Courts have routinely applied this

15  exception in cases where the first suit involved a declaratory judgment claim, as

16  does the Illinois Litigation.

17        In *Schmitt v. JD Edwards*, a plaintiff brought a declaratory judgment action

18  in the Northern District of California seeking a ruling from the court regarding the

19  validity of certain contracts.    On the same day, the defendant brought suit in

20  Colorado for breach of the contracts.    The defendant filed a motion to dismiss or

21  stay the California proceedings.    The California District Court granted the motion,

22  stating "If a court is faced with two suits, a first filed declaratory relief action and a

23  subsequent coercive suit filed in a different court, and the court determines that the

24  declaratory suit is a preemptive suit meant to deprive the natural plaintiff of the

25  forum of his choice, the court should dismiss or stay the declaratory suit. *Id*. (citing

26  *Alltrade,* 946 F.2d at 628). According to the court, "this prevents forum shopping

27  by a declaratory plaintiff who files suit in anticipation of being sued by a natural

28  plaintiff". *Id.*

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41275652.1

RESPONSE IN OPPOSITION TO
MOTION TO TRANSFER

1    "A number of cases have dismissed or stayed a first-filed declaratory

2    judgment suit in favor of a subsequent coercive suit". *Id.* (citing *Tempco Electric*

3    *Heather Corp. v. Omega Engineering, Inc.* 819 F.2d 746 (7th Cir 1998)). "In all of

4    these cases the court determined that the declaratory plaintiff had filed suit

5    preemptively and thus was not entitled to the benefit of the first-to-file rule." *Id.* at

6    *5.

7    As in *Schmitt*, there is substantial evidence that the instant action was filed

8    preemptively in order to rest jurisdiction away from Mr. Hollings. As mentioned

9    above, the instant dispute between Mr. Hollings and Defendants was ongoing and

10    the subject of multiple attempts at settlement. The parties attempted mediation,

11    which failed. Immediately following the mediation, the Defendants requested, and

12    scheduled, an additional settlement conference to occur on November 28, 2007 in

13    Tucson, Arizona. As shown by the email correspondence attached hereto as

14    Exhibit A, Mr. Hollings agreed to the conference but indicated that <u>suit would</u>

15    <u>become necessary if the November 28, 2007 conference was not successful</u>.

16    <u>On November 16, 2007, after receiving the email from Mr. Hollings'</u>

17    <u>counsel, but prior to even holding the settlement conference, TS Merchandising and</u>

18    <u>TS Productions filed the Illinois Litigation</u>.

19    Furthermore, and just as telling, the only claim which is arguably similar to

20    the claims pending in this court is a declaratory relief count asserted in the Illinois

21    Complaint. The declaratory relief count briefly asks the court to declare that Mr.

22    Hollings is not due any additional compensation for his work performed for The

23    Secret. This Court should follow the reasoning and precedent of numerous courts

24    faced with similar facts and decline to follow the first-to-file rule based upon the

25    anticipatory nature of the Illinois Litigation and <u>deny</u> Defendants' motion.

26    **ii.    The Illinois Litigation is a classic case of forum shopping.**

27    In addition to being anticipatory in nature, the Illinois Litigation is a blatant

28    attempt by *The Secret* to hale Mr. Hollings into court in a distant jurisdiction,

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

41275652.1                                    7              RESPONSE IN OPPOSITION TO
                                                            MOTION TO TRANSFER

1    knowing that an individual defendant would face greater difficulty in paying the

2    expenses associated with far-off litigation, especially in light of Defendants' failure

3    to properly compensate him for his work under the Contract.    The most telling

4    evidence of Defendants' forum shopping is the fact that Illinois has almost no

5    relation to the issues in this case or in the Illinois litigation.    As discussed above,

6    Mr. Hollings, WebServices and Loretta Hollings have such minimal or nonexistent

7    contacts with Illinois that they have filed a motion to dismiss for lack of personal

8    jurisdiction.    Further, *The Secret*, its creation, and the instant dispute have no

9    relation to Illinois.

10        Indeed, Defendants, seem to agree that Illinois has little or no relation to

11    disputes arising out of profits from the formation activities relating to *The Secret*.

12    Defendants recently filed a motion in another case where these same Defendants

13    have been sued for failing to compensate another person involved with the creation

14    of *The Secret* (the "Heriot Litigation").    Conveniently, the Heriot Litigation was

15    brought in the Northern District of Illinois.    In that case, however, Defendants have

16    filed a Motion to Dismiss attempting to transfer the case from Illinois to Australia

17    asserting that the <u>Northern District of Illinois is an improper forum without an</u>

18    <u>interest in the litigation</u>.    Defendants' brief states "Illinois has no interest in

19    determining the central issue of this case: whether Drew Pictures- a foreign

20    corporation with no operations in or apparent contacts with [Illinois]- co-owns [*The*

21    *Secret*] conceived and produced in Australia for broadcast on Australian

22    Television." (Heriot Motion to Dismiss, attached hereto as Exhibit C). Defendants

23    have asserted that the Northern District of Illinois has no interest in the ownership

24    of *The Secret*.    Yet, in bold fashion, the very same Defendants have brought suit

25    against Mr. Hollings, his company, and his wife in that very same District .

26        Defendants are guilty of forum shopping as a means to impose jurisdiction

27    far away from the prospective plaintiffs in order to deprive the plaintiffs of their

28    right to select the forum and in order to increase costs to a point where the plaintiffs

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41275652.1                    8             RESPONSE IN OPPOSITION TO
                                            MOTION TO TRANSFER

1    cannot afford to litigate. In the Heriot Litigation they attempt to transfer the case

2    **out** of the Northern District of Illinois to Australia; here they attempt to transfer the

3    instant litigation out of California and **into** the Northern District of Illinois.

4    Defendants' blatant bad faith and forum shopping are apparent from the

5    inconsistent positions asserted in these two cases. As such, this Court should find

6    that this is an appropriate circumstance to apply the exceptions to the first-to-file

7    rule and should <u>deny</u> Defendants' motion.

8    **d.    Defendants' Motion should be denied because the parties and**

9    **issues  in this case are not the same as the parties and issues in the**

10   **Illinois litigation.**

11   In determining whether the first-to-file rule applies, the court considers the

12   similarity of the parties and the similarity of the issues. ***Ward v. Follett Corp***. 158

13   FRD 645 (N.D. Cal. 1994).    In the present case, both the issues and the parties are

14   materially different from the parties and issues present in the Illinois Litigation.

15   Therefore, the instant case is not subject to the first-to-file rule.

16   **i.    The parties in the instant litigation are not the same as**

17   **the parties in the Illinois Litigation.**

18   In order for the first-to-file rule to apply, the parties to the instant litigation

19   must be "substantially similar" to the parties to the Illinois litigation. A basic

20   review of the pleadings shows that this is simply not the case. The instant action is

21   filed against seven (7) Defendants, including two critical Defendants Rhonda Byrne

22   and The Secret, LLC. Indeed, Defendant Byrne's testimony will place her as the

23   most central fact witness in the dispute on the side of Defendants. Neither

24   Defendant Byrne nor *The Secret* are parties to the Illinois Litigation. In fact, only

25   two of the seven Defendants are parties to the Illinois Litigation.

26   The only Defendants who are also parties to the Illinois Litigation,

27   Production and TS Merchandising, are holding companies created by *The Secret*

28   and Defendant Byrne after the agreement with Mr. Hollings was made. Defendant

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41275652.1                                9    RESPONSE IN OPPOSITION TO
                                               MOTION TO TRANSFER

1    Byrne has reportedly assigned some or all the proceeds at issue in this litigation to

2    TS Production.   Similarly, TS Merchandising has reportedly been assigned the

3    revenues relating to the distribution and sales of DVDs, books, and other materials

4    relating to *The Secret*.   Neither TS Merchandising or TS Production were parties to

5    the original agreement at issue in this litigation, rather, they have subsequently

6    assumed rights and obligations relating to the agreement and the proceeds to which

7    Mr. Hollings is entitled.  As such they are included in the instant action to protect

8    Mr. Hollings' ability to recover the amounts he is due.

9        It is clear from the Amended Complaint that the agreement at issue was

10    between Defendant Byrne and her company, Prime Time, and Mr. Hollings.

11    Therefore, a resolution of the instant case demands their presence.  As neither of

12    them are parties to the Illinois Litigation, there can be no determination that the

13    parties are "substantially similar" so as to mandate application of the first-to-file

14    rule.

15        In support of their motion, Defendants have cited to the case of ***L. Cohen***

16    ***Group v. Herman Miller, Inc***., 2006 U.S. Dist. LEXIS 2301 at *5-7 (N.D. Cal.

17    2006) which is clearly distinguishable from the instant case.  In ***L. Cohen Group***,

18    the second-filed lawsuit was filed against nearly identical parties.  Indeed, the only

19    difference between the parties in the two lawsuits there at issue was that the first-

20    filed case included one additional defendant.  Therefore, all of the defendants who

21    were included in the second action were already present in the first action.  Unlike

22    ***L. Cohen Group***, the primary defendants, including Defendants Byrne, Prime Time

23    US and *The Secret*, are NOT parties to the first action.  The ***L. Cohen Group***

24    decision, therefore, is materially distinct.

25        Likewise, the case of ***Nova Wines Inc. v. Adler Fels Winery***, 2007 U.S. Dist.

26    LEXIS 14910, *9 (N.D. Cal. 2007), cited by Defendants, is equally distinguishable.

27    In ***Nova Wines***, the Court chose to stay <u>counterclaims</u> raised in a second-filed case

28    in light of an earlier-filed case filed in the Central District of California.  Notably,

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41275652.1         10    RESPONSE IN OPPOSITION TO
MOTION TO TRANSFER

1    the *Nova Wines* decision did not involve a decision to transfer the case but, rather, a

2    decision to stay counterclaims in the second-filed litigation pending the outcome of

3    the first.    The court found that a determination of the issues in the first-filed

4    litigation would be relevant and probative to the issues raised by the counterclaims

5    in the second litigation.    The court expressly noted that it was not dismissing the

6    counterclaims but merely staying them pending determination of related issues in

7    the first-filed litigation. *Id.* at *11.

8        Unlike *Nova Wines*, however, a determination of the claims within the

9    Illinois Litigation will not impact the claims in the instant case.    Namely, a

10    determination of whether Mr. Hollings infringed on TS Merchandising or TS

11    Production's trademark will not affect a determination of whether Defendant Byrne

12    and Prime Time have breached their agreement with Mr. Hollings, are guilty of

13    fraud, or engaged in unfair business practices.    Additionally, the Illinois litigation

14    will not require a determination of the Illinois Litigation will not reach the

15    substantial equitable claims asserted by Mr. Hollings in this lawsuit.

16        Finally, neither *L. Cohen* or *Nova Wines* involved the clear indications of

17    forum shopping and anticipatory litigation present in this case to give rise to the

18    exception to the first-to-file rule.    Based upon these clear distinctions, neither of

19    these cases provides dispositive guidance in this case.

20          **ii.    The issues in the lawsuits are materially different.**

21        In addition to the disparity between the parties, the issues in the Illinois

22    Litigation are different than those presented in the instant litigation.    The Illinois

23    Litigation asserts claims related to alleged trademark infringement, trademark

24    dilution, cybersquatting, unfair competition and breach of fiduciary duty.    None of

25    these claims is at issue in this litigation.    In stark contrast, the instant dispute raises

26    claims for breach of contract, fraudulent inducement, unjust enrichment,

27    promissory estoppel and unfair business practices related to the agreement between

28    Defendants and Mr. Hollings.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41275652.1                              11        RESPONSE IN OPPOSITION TO
                                                  MOTION TO TRANSFER

1     The only basis that Defendants have for contending that the issues in the two

2     cases is "substantially the same" is the fact that TS Production and TS

3     Merchandising included a final count in their complaint for declaratory relief.  The

4     Declaratory Relief count, however, requests determination only that: TS

5     Merchandising fully and adequately compensated Mr. Hollings for the value of his

6     services and that Hollings is not entitled to further compensation for services

7     performed for The Secret during his engagement.  The count makes no reference to

8     Mr. Hollings' agreement with Defendants Byrne and Prime Time, whether he is

9     entitled to further compensation for Ms. Byrne's fraudulent inducement or unfair

10    business practices or whether he may receive an accounting to clarify his legal

11    entitlement to compensation.

12    The presence of TS Production and TS Merchandising's single count for

13    Declaratory Relief does not render the multiple claims within the Illinois Litigation

14    "substantially similar" to the multiple claims in the instant action.  Plaintiff has

15    asserted multiple claims which are not referenced in the Illinois litigation, nor

16    which may necessarily be addressed in that lawsuit.  Further, even the single count

17    for declaratory relief which Defendants contend is sufficient to render the two

18    actions sufficiently identical, is materially distinct from the claims asserted in the

19    instant action.

20    **e.     Defendants' Motion should be stayed because the Illinois litigation**

21    **is subject to a pending motion to dismiss.**

22

23    Finally, in the event that the Court determines that the first-to-file rule may

24    apply in this case, and that none of the exceptions to the rule are applicable, the

25    Court should stay the instant case rather than transfer it to Illinois because the

26    Illinois Litigation is subject to dismissal.  Based upon the complete lack of contacts

27    between Defendants and Illinois, Mr. Hollings, together with the other defendants

28    in the Illinois action, filed a motion to dismiss for lack of personal jurisdiction,

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41275652.1                          12     RESPONSE IN OPPOSITION TO
                                           MOTION TO TRANSFER

1    which motion is still pending before the court.  The Ninth Circuit Court of Appeals

2    has specifically stated that, "where the first filed action presents a likelihood of

3    dismissal, the second-filed suit should be stayed rather than dismissed". *Alltrade,*

4    *Inc. v. Uniweld Products, Inc.*, 946 F. 2d. 622 (9th Cir. 1991); See also *Schmitt v.*

5    *JD Edwards World Solutions Co.*, 2001 U.S. Dist. LEXIS 7089 (N.D. Cal. 2001).

6        It is likely that the Illinois Litigation will be dismissed for a lack of personal

7    jurisdiction over some or all of the Illinois defendants.  Should the court grant the

8    instant motion and transfer the case to Illinois, and should the court decide to grant

9    the pending motion to dismiss, Mr. Hollings would be forced to incur unneeded

10   time and expense in refilling and reviving the instant action before this Court.

11   Therefore, while Plaintiff respectfully submits that Defendants' Motion should be

12   denied in its entirety, in the event that the Court determines that the first-to-file rule

13   applies, and that this case should be transferred to Illinois, Plaintiff respectfully

14   requests that the Court stay the instant proceedings pending a resolution of the

15   motion to dismiss for lack of personal jurisdiction in the Illinois Litigation.

16   ## III.   CONCLUSION

17
18       The Illinois Litigation is distinct from the present lawsuit and was filed in a

19   blatant attempt to force Mr. Hollings to litigate in a distant jurisdiction. First and

     foremost, the Court should decline to consider Defendant's motion based upon their
20
     purposeful disregard for Local Rule 7.3.    Further, the Court should deny
21
     Defendants' motion to transfer because the parties and issues in this case are
22
     dissimilar from the parties and issues in the Illinois litigation. Therefore, the first-
23
     to-file rule does not apply in this case.  Even if it did apply, however, the Court
24
     should apply the exception to the rule because the Illinois litigation was brought as
25
     a bad-faith anticipatory lawsuit and serves as a clear example of improper forum
26
     shopping.  Finally, to the extent that the Court determines that a transfer would be
27
     appropriate, the Court should stay the case rather than transfer it because the Illinois
28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41275652.1                                13        RESPONSE IN OPPOSITION TO
                                                     MOTION TO TRANSFER

1    Litigation is subject to dismissal on Mr. Hollings Motion to Dismiss for Lack of

2    Personal Jurisdiction.

3

4    Dated:    June 23, 2008                    Respectfully submitted,

5                                              Manatt, Phelps & Phillips, LLP
                                               Gerald A. Margolis
6                                              Craig S. Rutenberg

7                                              Mozley, Finlayson & Loggins LLP
                                               Christopher E. Parker (*admitted pro hac vice*)
8                                              Jessica C. Lawrence (*admitted pro hac vice*)

9

10   By: _____
                                               Craig S. Rutenberg
11                                             *Attorneys for Plaintiff*
                                               DAN HOLLINGS

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

41275652.1                        14        RESPONSE IN OPPOSITION TO
                                            MOTION TO TRANSFER

# EXHIBIT A

-----Original Message-----
From: Lisa Thompson
Sent: Thu 10/25/2007 2:42 PM

To: Mercado, Teresita T.
Subject: Hollings/The Secret

Hi Teresita,

Dan is willing to meet with Bob for an hour at Westward Look (Gold room),
but he would like Rhonda to attend or in lieu of Rhonda's attendance he would
like a signed (can be faxed) document from Rhonda indicating that Bob has
her authority and approval to settle this matter with Dan.  I discussed non-
monetary compensation with Dan and he said he is not interested in any
endorsement and view this purely as a financial matter.

Dan is available tomorrow, but I am not sure the meeting can be put together
by then.  If so, let me know or alternatively, let me know another time and I
will see what I can do.  Thanks, Lisa


Lisa C. Thompson, Esq.


-----Original Message-----
From: Mercado, Teresita T. [mailto:TMercado@ssd.com]
Sent: Wed 10/31/2007 10:58 PM
To: Lisa Thompson
Cc: Cabianca, Brian A.
Subject: RE: The Secret

Lisa -- Bob is out of the country next week, but is trying to find an available date (or range
of dates) the week of Nov. 12th to meet with Dan.  I'm out of the office tomorrow and
Friday, but will get back to you on Monday with some dates.


From: Lisa Thompson
Sent: Wednesday, November 07, 2007 10:44 AM
To: 'Mercado, Teresita T.'
Subject: Hollings and The Secret


Hi Teresita,

Dan is available the 14th and 15th and says that he can make himself available
pretty much the rest of November with the exception of Thanksgiving to meet
with Bob Rainone.  However, his stipulations still apply with the biggest being
he would like something signed by Rhonda indicating that Bob has authority to
settle the case on her behalf as Dan feels like the agreement was made between
the two of them.  He would like to meet with her, but understands that Bob is
the one that is available.

15

We do intend to proceed with the case if Dan and Bob cannot reach an agreement. We are in the process of obtaining a forensic accounting expert. In addition, we have been contacted by both New York and Australian counsel for Drew Hariot in regards to his litigation against the Secret and the copyright issues. We have not yet spoken to them. If we can reach an agreement in regards to my client's issue, we will restrain any communications to those that are required by subpoena or court order. Dan will not meet with Bob after November so we need to make this work now if possible. Also, I do need the authorization from Rhonda which does not need to be an original, but faxed or scanned. Thank you and let me know what I can do to facilitate the meeting, Lisa


Lisa C. Thompson, Esq.
Thompson Law Group, P.C. - Arizona




From: Cabianca, Brian A. [mailto:BCabianca@ssd.com]
Sent: Monday, November 26, 2007 5:02 PM
To: Lisa Thompson
Cc: Mercado, Teresita T.
Subject: RE: Hoollings and the Secret


Lisa,

Bob was able to make a last minute flight reservation, and thus his plane is scheduled to land in Tucson on Nov. 28 at approx. 12:40 pm. Thus, we were thinking Bob and Dan could meet at the Arizona Inn at approximately 1:30 or 2pm. We are still trying to make arrangements for a conference room at the Arizona Inn where Bob and Dan could meet, and we will let you know as soon as that is finalized.

Best Regards,

Brian


From: Lisa Thompson [mailto:lctesq@thompsonlawgroup.com]
Sent: Monday, November 26, 2007 12:22 PM
To: Cabianca, Brian A.
Cc: Mercado, Teresita T.
Subject: Hoollings and the Secret


My client just got back to me and has decided he will meet with Bob on November 28th if that is still viable. Please let me know the location near the

airport and time so I can pass it along to my client.  Lisa

Lisa C. Thompson, Esq.
Thompson Law Group, P.C. - Arizona

# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF ILLINOIS (EASTERN DIVISION)

TS Merchandising Ltd., a British Virgin Islands
corporation, and TS Production LLC, a Hungarian
limited liability company,

                Plaintiffs,

      vs.

Dan and Loretta Hollings, Arizona residents, and
Web Services, LLC, an Arizona limited liability
company,

                Defendants.

Case No.  07 C 6518

(Assigned to The Hon. Ronald A. Guzman)

## DEFENDANTS' MOTION TO DISMISS FOR LACK
## OF PERSONAL JURISDICTION AND MEMORANDUM OF LAW IN SUPPORT

      COME NOW Dan and Loretta Hollings, and WebServices, LLC, by way of special

appearance without waiving any defenses relating to jurisdiction, through their counsel of record,

and move this Court, pursuant to Fed. R. Civ. Proc. 12(b)(2), for the entry of an Order dismissing

this case for lack of personal jurisdiction. In support of this motion, Defendants state as follows:

    I.      STATEMENT OF FACTS

      The instant action has been filed against three nonresidents of this judicial district, none

of whom have sufficient contacts with the State of Illinois to confer personal jurisdiction herein.

Indeed, in their Complaint, Plaintiffs do not even allege that Defendants Loretta Hollings or

WebServices have had any contacts with the State of Illinois. Furthermore, Defendant Dan

Hollings' contacts with Illinois, even as alleged in the Complaint, consist solely of limited email

and telephone correspondence and a single visit to Chicago that was made at the demand of the

Plaintiffs near the end of their business relationship. Each of these limited contacts was for the

purpose of discussing The Secret website and its operations. (Complaint ¶ 8-9). These limited

contacts were made pursuant to the explicit directions and requirements of Bob Rainone, CEO of

Plaintiffs. Furthermore, the claims within this lawsuit arise more specifically from allegations

relating to a different website, www.know-more-secrets.com (the "Know More Website"), and do not relate to The Secret website or its operations.

The contacts of each of the three defendants with the State of Illinois are set forth more specifically below. These contacts are insufficient to confer personal jurisdiction over these Defendants. Defendants respectfully request that the Court dismiss the instant action against each defendant for lack of personal jurisdiction.

### a. Loretta Hollings' Lack of Contacts with Illinois.

Loretta Hollings is a resident of Arizona and has been since 1999. Affidavit of Loretta Hollings, attached hereto as Exhibit A, ¶3. In fact, Ms. Hollings has not been to Illinois in 6 years. *Id.* at ¶11. Ms. Hollings does not own, use or possess any property in Illinois. *Id.* at ¶4. She is not liable for income or property tax in Illinois, nor does she maintain any bank accounts in the State of Illinois. *Id.* at ¶¶5-6. Ms. Hollings does not maintain an office or telephone number in Illinois and is not registered to vote in Illinois. *Id.* at ¶¶7-8. Furthermore, Ms. Hollings has never had <u>any</u> contact with the Plaintiffs, Rhonda Byrne, Bob Rainone, or The Secret, LLC in Illinois or any other location. *Id.* at ¶10. Plaintiffs have not asserted that Ms. Hollings has any contacts whatsoever with the State of Illinois. Rather, they have added her as a defendant to the instant lawsuit solely because she is married to Mr. Hollings and Arizona, unlike Illinois, is a community property state.

### b. Dan Hollings' Limited Contacts with Illinois.

Defendant Dan Hollings is a resident of Arizona. Affidavit of Dan Hollings, attached hereto as Exhibit B, ¶3. In 2005, Mr. Hollings began negotiations with Rhonda Byrne to create and maintain a website for her project, The Secret ("The Secret Website"). *Id.* at ¶¶9-10. Ms. Byrne represented that she was in the course of producing a movie called The Secret and solicited Mr. Hollings' help in designing and setting up the website and overseeing internet activities such as customer support, fulfillment and programming for The Secret's website.[1] *Id.* at ¶11. All of the negotiations and agreements surrounding the work that Mr. Hollings' performed on The Secret Website were between Mr. Hollings and Rhonda Byrne as well as her

---

[1] Mr. Hollings did not have a contractual relationship, nor was he engaged by The Secret. Rather, his work was negotiated with and performed for Rhonda Byrne and Prime Time Products. *See* Exhibit B, ¶16.

company Prime Time Products. *Id.* at ¶10. At all times during the negotiation of his work on The Secret, Mr. Hollings was in Arizona and Ms. Byrne was in <u>Australia or California</u>. *Id.* at ¶12. At no time in his negotiations with Ms. Byrne or her companies was there a reference or requirement that the relationship would have any contacts with the State of Illinois.

All of the work that Mr. Hollings performed associated with The Secret website was performed from his home in Arizona, the same place where he was first contacted by Ms. Byrne and her Company. *Id.* at ¶13. In late 2005, without the knowledge or consent of Defendants, Ms. Byrne and/or Prime Time Products hired Bob Rainone to act as CEO for The Secret. *Id.* at ¶14. Mr. Rainone apparently lives in Illinois. *Id.* Following Mr. Rainone's retention as CEO and well after Mr. Hollings had begun performing services on behalf of Ms. Byrne and Prime Time, The Secret established offices in Illinois. *Id.* at ¶14. By the time The Secret had established offices Illinois, Mr. Hollings had already been retained and had already begun work on The Secret website in Arizona. *Id.* at ¶¶13, 15. After Mr. Rainone was hired, he instructed Mr. Hollings to redirect his monthly invoices for his work to The Secret at its offices in Illinois, which Mr. Hollings did per his instructions. *Id.* at ¶17. Mr. Hollings never initiated any working relationship with Mr. Rainone or any employees of The Secret's Illinois office. *Id.* at ¶18. The fact that Mr. Hollings corresponded and sent invoices to Illinois was due to the unilateral decision of Ms. Byrne and Prime Time Products to subsequently establish offices in Illinois.[2] *Id.*

With respect to his ongoing work for Ms. Byrne, Mr. Hollings' communications were conducted from his Arizona residence and occurred primarily by electronic means, including emails and telephone calls that included other parties in various parts of the world. *Id.* at ¶¶12-13, 18. Approximately one month prior to his termination from The Secret, LLC, Mr. Hollings was required to attend a one-day meeting at the Chicago O'Hare International Airport in Chicago, Illinois. *Id.* at ¶20. This meeting was the only occasion in which Mr. Hollings traveled to Illinois for anything associated with The Secret. *Id.* In fact, this was the only time Mr. Hollings has visited Illinois in the past six years. *Id.* at ¶21. Mr. Hollings has never visited The Secret's Illinois office. *Id.* at ¶19.

---

[2] Upon information and belief, Ms. Byrne now resides in California.

Mr. Hollings does not own, use or possess any property in Illinois. *Id.* at ¶4. Mr. Hollings is not liable for income or property tax in Illinois and does not maintain any bank accounts in Illinois. *Id.* at ¶¶5-6. Mr. Hollings does not maintain an office or telephone number in Illinois and is not registered to vote in Illinois. *Id.* at ¶¶7-8. The website at issue in this litigation, www.know-more-secrets.com (the "Know More Website") was designed and launched from Mr. Hollings' home in Arizona. *Id.* at ¶22. Further, any URLs, domain names or website addresses which Mr. Hollings registered were registered from Mr. Hollings' home in Arizona. *Id.* at ¶23.

c. WebServices' Contacts with Illinois.

As with Loretta Hollings, Plaintiffs have failed to even allege that WebServices has any contacts with Illinois so as to confer jurisdiction in this Court. To the contrary, WebServices was incorporated in the State of Arizona and has its principle place of business in Tucson, Arizona. WebServices does not own, rent or maintain an office in Illinois. Affidavit of Dan Hollings as Managing Member of WebServices, LLC, attached hereto as Exhibit C, ¶4. WebServices does not own, rent or maintain an office in Illinois and does not maintain any bank accounts in Illinois. *Id.* at ¶¶8-9. WebServices does not have any employees in Illinois. *Id.* at ¶10. WebServices does not conduct or solicit any business in Illinois and does not derive substantial revenue from within the State of Illinois. *Id.* at ¶¶11-12. WebServices does not send marketing materials to Illinois. *Id.* at ¶13. WebServices, has not entered into any contract in Illinois with the Plaintiffs, Rhonda Byrne, Bob Rainone or The Secret, LLC. *Id.* at ¶14. In fact, WebServices' sole contact with Illinois were invoices which were submitted for services performed on The Secret Website pursuant to the express instructions from Bob Rainone and which do not give rise to the claims alleged in this lawsuit. *Id.* at ¶6.

II.    ARGUMENT AND AUTHORITY

a. Dismissal is proper because the Court lacks Personal Jurisdiction over each of the named Defendants.

i. The Standard for Dismissal Based Upon Lack of Personal Jurisdiction.

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of making a prima facie showing that jurisdiction over the defendant is proper. See *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997); *Roiser v. Cascade Mountain, Inc.*, 367 Ill. App. 3d 559 (2006). The court, in deciding such a motion, may receive and consider

affidavits from both parties. See *Nelson by Carson v. Park Industries, Inc.*, 717 F.2d 1120, 1123 (7th Cir. 1983); *Kennelsource, Inc. v. Barking Hound Vill.*, LLC, 2006 U.S. Dist. LEXIS 65455 (D. Ill. 2006). Conflicts between the parties' affidavits will be resolved in favor of the plaintiff for purposes of establishing a *prima facie* case of personal jurisdiction over a non-resident defendant. *Kalata v. Healy*, 312 Ill. App. 3d 761, 728 N.E.2d 648 (2000). Each defendant's contacts with the forum state must be assessed individually. See *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984). *Kennelsource, Inc.*, 2006 U.S. Dist. LEXIS 65455.

Defendants in this case have asserted subject matter jurisdiction based on both diversity of citizenship and federal question grounds.[3] A federal district court sitting in diversity in Illinois has jurisdiction over a non-consenting, non-resident defendant if an Illinois state court would have jurisdiction. See *McIlwee v. ADM Indus., Inc.*, 17 F.3d 222, 223 (7th Cir. 1994); *Daniel J. Hartwig Assoc., Inc., v. Kanner*, 913 F.2d 1213, 1216 (7th Cir. 1990). Pursuant to the Illinois long-arm jurisdictional statute, personal jurisdiction extends to the limit allowed under the due process clauses of the United States and Illinois constitutions. *Dehmlow v. Austin Fireworks*, 963 F.2d 941, 945 (7th Cir. 1992); *Wilson v. Humphreys (Cayman) Ltd.*, 916 F.2d 1239, 1243 (7th Cir. 1990). Courts sitting in diversity in Illinois have made it clear that they cannot look solely to federal due process principals. "The Illinois constitution constrains its own separate and independent guarantee of due process, which also must be satisfied for a court to have jurisdiction over a defendant." *Glass v. Kemper Corporation*, 930 F. Supp. 332 (1996).

---

[3] Defendants submit that Plaintiffs have failed to properly plead the grounds necessary for diversity of citizenship jurisdiction because they have not pled any of the requirements necessary for diversity jurisdiction, namely citizenship or the amount in controversy. *Held v. Held*, 137 F.3d 998, 1000 (7th Cir. 1998); *Jeffries v. Silvercup Bakers, Inc.*, 434 F.2d 310, 311 (7th Cir. 1970). "Mere incantation of a federal statute does not confer jurisdiction". *Rendina v. Falco*, 2006 U.S. Dist. LEXIS 67100 (2006). However, because Plaintiffs have also pled federal question jurisdiction, Defendants move for dismissal based on Plaintiffs' failure to meet this broader standard.

Therefore, a court sitting in diversity would need to analyze whether jurisdiction violated due process provided by either the federal constitution or the Illinois constitution.

In a federal question case, the inquiry is whether haling defendants into court in Illinois accords with principles of due process under the federal constitution. See *United States v. De Ortiz*, 910 F.2d 376, 381-82 (7th Cir. 1990). Because a federal court sitting in federal question jurisdiction is not constrained by the Illinois constitution, a federal question case provides a broader reach of jurisdiction for the court. As Plaintiffs have attempted to invoke both federal question and diversity jurisdiction in this case, Defendants will address the broader test for jurisdiction: whether exercise of personal jurisdiction over the Defendants would offend due process under the federal constitution. To the extent that Plaintiff cannot exercise personal jurisdiction under the federal question analysis, it follows that jurisdiction would not be found in the more limited analysis available in a diversity case.

Defendants respectfully submit that the exercise of personal jurisdiction over any of the three Defendants in this case would offend due process and, as such, request that this matter be dismissed for lack of personal jurisdiction.

                    ii.  Federal Due Process

"Due process measures the limits of personal jurisdiction by the strength of the relationship between the defendant and the forum state." *Glass*, 930 F. Supp. at 338. Federal due process requires that the defendant have "minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Courts have typically considered the due process analysis as a two-part inquiry: do minimum contacts exist, and if so, does the exercise of personal jurisdiction comport with traditional notions of fair play and substantial justice? *Glass*, 930 F. Supp. at 338. Under the federal due process clause, jurisdiction is only proper when the defendant has sufficient contacts with the forum state such that he has "'fair warning' that based on his conduct and connection with the state, he reasonably should anticipate being sued there." *Zeidler v. A&W Restaurants, Inc.* 2004 U.S. Dist. LEXIS 9352, *3 (N.D. Ill 2004) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)).

Minimum contacts are those acts by which the defendant has "purposefully availed [himself] of the privilege of conducting activities within the forum," *Hanson v. Denckla*, 357 U.S. 235, 253 (1958), such that he should "reasonably anticipate being haled into court there."

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Subject to the limits of due process, a court may exercise two types of personal jurisdiction over an out-of-state defendant: general and specific. *Glass*, 930 F. Supp. at 338.

## 1. Specific Jurisdiction

Specific jurisdiction arises only when the claims asserted within the litigation arise from the defendant's contacts with the forum state. *Wilson v. Humphreys (Cayman), Ltd.,* 916 F.2d 1239, 1243 (7th Cir. 1990). For the court to find that it has specific jurisdiction over any of the Defendants, that Defendants' contacts with the forum must be related to Plaintiffs' claims. Further, a court must "focus on whether it is fundamentally fair to require the defendant to submit to the jurisdiction of the court with respect to this litigation." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.,* 338 F.3d 773, 780 (7th Cir. 2003) (citing *World-Wide Volkswagen,* 444 U.S. at 292, and *International Shoe,* 326 U.S. at 316-17.)

The court must consider "foreseeability" by the defendant meaning whether or not "the defendant could have anticipated being haled into the courts of the state with respect to the matter at issue." *Purdue Research Found.,* 338 F.3d at 780. In assessing such forseeability it is the defendant's conduct that is pertinent because "it must be the activity of the defendant that makes it amenable to jurisdiction, not the unilateral activity of the plaintiff or some other entity." *Id.* It must be established that the "defendant purposefully availed itself of the privilege of conducting activities within the forum state." *Id.; Griffith v. Wood Bros.,* 2004 U.S. Dist. LEXIS 21606 (D. Ill. 2004). The only matters of consequence in assessing whether a court may exercise jurisdiction over a non-resident defendant are the actions (if any) which the non-resident defendant has taken in the forum state. *Zeidler v. A&W Restaurants,* 2004 U.S. Dist. LEXIS 9352 (2004).

## 2. General Jurisdiction

If the Court does not have specific jurisdiction over the Defendants, it must find that the non-resident defendant has such continuous, systematic and substantial contacts so as to confer general jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416, (1984). The contacts must be "so substantial and of such a nature as to justify suit against [the defendant] on causes of action arising from dealings entirely different from those activities." *International Shoe,* 326 U.S. at 318. This is a high standard requiring a great amount of contact with the forum state at the initiation of the defendant. *Glass v. Kemper Corp.,* 930 F. Supp. 332,

338 (D. Ill. 1996). For this Court properly to exercise general jurisdiction over Defendants, their contacts with Illinois must be continuous, systematic, and substantial. See *Helicopteros*, 466 U.S. at 416; *International Shoe*, 326 U.S. at 318; *Glass*, 930 F. Supp. at 338.

It is necessary for the court to weigh the contacts of each defendant individually. *Hustler Magazine, Inc.*, 465 U.S. at 781 n.13; *Kennelsource, Inc.*, 2006 U.S. Dist. LEXIS 65455. In performing this analysis, it is clear that none of the Defendants have purposefully availed themselves of an Illinois forum sufficiently to allow for the exercise of personal jurisdiction.

      iii. <u>The Court lacks personal jurisdiction over each of the three named defendants.</u>

          1. <u>The Court lacks personal jurisdiction over Loretta Hollings.</u>

The Affidavit of Loretta Hollings, together with the allegations contained within the Complaint, demonstrate that Loretta Hollings does not have sufficient contacts with Illinois such that this Court can exercise personal jurisdiction, either general or specific, over Ms. Hollings. First and foremost, the Complaint does not allege a single claim against Ms. Hollings. Rather, Ms. Hollings is named as a Defendant "only to the extent that she has an interest in the marital community". (Complaint ¶ 4). Because the Complaint does not allege any claims against Ms. Hollings, it would be impossible for the Court to have specific jurisdiction over Ms. Hollings as she cannot have any contacts with Illinois which relate to the claims asserted in the complaint. Therefore, in order for the Court to have personal jurisdiction over Ms. Hollings, she must have sufficient contacts to grant the Court general jurisdiction over her. Ms. Hollings' Affidavit, together with the Complaint, make it abundantly clear that Ms. Hollings does not have contacts with Illinois sufficient to confer jurisdiction.

Ms. Hollings does not own, use or possess personal property in Illinois. Exhibit A, ¶4. Ms. Hollings is a citizen and resident of the State of Arizona and has been since 1999. *Id.* at ¶3. Ms. Hollings has not even visited the State of Illinois in the past six (6) years. *Id.* at ¶11. Ms. Hollings does not pay income or property taxes in the State of Illinois, does not maintain a bank account in the State of Illinois, does not have an office or telephone number in the State of Illinois and is not registered to vote in the State of Illinois. *Id.* at ¶¶5-8. Ms. Hollings simply does not have any contacts with the State of Illinois. This fact is made even clearer by the fact that Plaintiffs have completely failed to make any allegations of contacts by Ms. Hollings with

Illinois within their complaint. Indeed, her name is completely absent from the section of the Complaint entitled "Jurisdiction and Venue".

The plaintiff bears the burden of making a prima facie showing that jurisdiction over the defendant is proper. See *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997). With regard to Ms. Hollings, the Plaintiffs have failed to assert even a single contact with Illinois which would establish personal jurisdiction over her. As such, Plaintiffs have failed to meet their burden. The testimony set forth in Ms. Hollings' Affidavit demonstrates that she does not have sufficient contacts with Illinois to confer jurisdiction.

2.    The Court lacks personal jurisdiction over Dan Hollings.

Mr. Hollings does not have sufficient contacts with Illinois to allow the exercise personal jurisdiction over him by this Court. Plaintiffs have alleged that personal jurisdiction over Mr. Hollings rests on telephone and email communications which occurred during his 17-month engagement "to discuss The Secret website and related issues" and one visit which Mr. Hollings made in December, 2006, at the request of The Secret, to "discuss website operations". (Complaint, ¶8).

a.    The Court does not have general jurisdiction over Dan Hollings.

Mr. Hollings email and telephone conversations with TS Merchandising employees, together with his lone visit to Chicago in December, 2006 are not sufficient to grant this Court general jurisdiction over Mr. Hollings. According to the United States Supreme Court and district courts within this circuit, "[g]eneral jurisdiction arises when the nonresident defendant has continuous and systematic general business contacts with the forum state". *Glass v. Kemper Corporation*, 930 F. Supp. 332 (1996) (citing *Hanson v. Denckla,* 357 U.S. 235 (1958)). "This is a fairly high standard requiring a great amount of contacts". *Glass*, 930 F. Supp. at 338. For this court to exercise general jurisdiction over Mr. Hollings, Mr. Hollings' contacts with Illinois must be continuous, systematic and substantial. *Id.*

In *Glass,* 930 F. Supp at 336, the Court found a lack of personal jurisdiction over a nonresident defendant who had substantially more contacts with the State of Illinois than Mr. Hollings. In *Glass*, the nonresident defendant was employed by a company which had its headquarters in Illinois. The defendant interviewed for his position at the company's office in Chicago, attended orientation in Chicago at the start of his employment, made seven trips to

Chicago attend board meetings during his employment with the Plaintiff, engaged in telephone conversations and written communications with people at the headquarters in Chicago and even maintained a banking relationship with First Chicago, based in Chicago, where he maintained his checking account, money market and IRA. (*Id.* at 336-337).

In finding that the court <u>lacked</u> personal jurisdiction, the Court specifically analyzed whether there were sufficient contacts to establish general jurisdiction over the defendant. The court in Glass found that the defendant's contacts with Illinois were too sporadic, tenuous, and insubstantial to warrant exercising jurisdiction over him for matters unrelated to his contacts with the state. *Id.* at 339. In fact the court noted that the defendant's "lack of contacts overwhelm[ed] his few contacts with the state" because he did not live in Illinois, own real property in Illinois, maintain an office or telephone number in Illinois, vote in Illinois and did not pay income taxes in Illinois. *Id.*

Applying the court's reasoning in *Glass* to the instant case results in the inescapable conclusion that the court lacks personal jurisdiction over Mr. Hollings. Similar to *Glass*, Mr. Hollings has participated in telephone and written correspondence with a home office in Chicago. *See* Exhibit B, ¶18. However, unlike in *Glass*, Mr. Hollings did not negotiate or interview at a Chicago office. *Id.* at ¶12. All of his negotiations in entering the working arrangement on The Secret Website were done from his Arizona home and were directed to Ms. Byrne in Australia. *Id.* at ¶¶9-13. Further, the defendant in *Glass* attended seven (7) meetings at the defendant's Chicago headquarters whereas Mr. Hollings only attended one meeting at the Chicago O'Hare airport. *Id.* at ¶¶20-21. Further, the defendant in *Glass* maintained an ongoing relationship with a Chicago bank. Mr. Hollings has no such contacts. *Id.* at ¶6.

It is well-settled by Illinois Federal Courts that electronic and written communications sent into Illinois are alone not enough to establish personal jurisdiction over a non-resident defendant. ***Brooks v. Belkins Van Lines, LLC***, 2006 U.S. Dist. LEXIS 88652 (N.D. Ill. 2006) (citations omitted). Other federal courts have found a lack of jurisdiction over nonresident defendants based upon much greater contacts with forums than Mr. Hollings has with Illinois. *See, e.g., Helicopteros*, 466 U.S. at 411, (no general jurisdiction where nonresident defendant negotiated contract in forum; purchased 80 percent of its helicopter fleet, spare parts, and accessories from company in forum state; sent pilots to forum state for training and to bring helicopters to South America, sent management and maintenance personnel to forum state for

"plant familiarization" and technical consultation; and received over $ 5 million in payments drawn upon bank in forum state); *Shute v. Carnival Cruise Lines,* 897 F.2d 377, 381 (9th Cir. 1990) (no general jurisdiction where defendant advertised in forum state; mailed brochures and paid commissions to travel agents in forum state; and sold vacation cruises to residents of forum state); *Obermeyer v. Gilliland,* 873 F. Supp. 153, 157-58 (C.D. Ill. 1995) (no general jurisdiction in Illinois where defendant truck driver, as his only route, regularly drove truck from Michigan to Illinois and was en route to Illinois when accident occurred in Michigan).

As stated in Plaintiffs' complaint, Mr. Hollings' limited contacts with Illinois consist of telephone and email correspondence with The Secret's Illinois office, which occurred as a result of Ms. Byrne and Prime Time Product's subsequent unilateral decision to set up an office in Illinois, and one business meeting at the Chicago Airport which Mr. Hollings was required to attend. Mr. Hollings' contacts are not continuous, systematic and substantial and, as such, he is not subject to general jurisdiction in this court.

b.   The Court does not have specific jurisdiction over Mr. Hollings.

Specific jurisdiction arises only when the defendant's contacts with the forum are related to the controversy underlying the litigation. *Wilson,* 916 F.2d at 1244. In analyzing personal jurisdiction a court must "focus on whether it is fundamentally fair to require the defendant to submit to the jurisdiction of the court with respect to this litigation." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.,* 338 F.3d 773, 780 (7th Cir. 2003) (citing *World-Wide Volkswagen,* 444 U.S. at 292, and *International Shoe,* 326 U.S. at 316-17). The court must consider "foreseeability" by the defendant meaning whether or not "the defendant could have anticipated being haled into the courts of the state with respect to the matter at issue." *Purdue Research Fund,* 338 F.3d at 780. In assessing such forseeability it is the <u>defendant's</u> conduct that is pertinent because "it must be the activity of the defendant that makes it amenable to jurisdiction, not the unilateral activity of the plaintiff or some other entity." *Id; Zeidler v. A&W Restaurants,* 2004 U.S. Dist. LEXIS 9352 (2004). It must be established that the "defendant purposefully availed itself of the privilege of conducting activities within the forum state." *Id.; Griffith v. Wood Bros.,* 2004 U.S. Dist. LEXIS 21606 (D. Ill. 2004). The court in the present case does not have personal jurisdiction over Mr. Hollings for two reasons. First, Mr. Hollings' few contacts with the State of Illinois do not relate to the claims within this litigation. Second, Mr. Hollings

very limited contacts with Illinois were made only pursuant to direct instructions from Bob Rainone and not of his own purposeful availment.

Plaintiffs' complaint alleges that Mr. Hollings had contacts with Illinois through email, telephone and the single business meeting to discuss The Secret website operations. (Complaint, ¶ 8). None of the claims within the Complaint, however, arise out of The Secret website or its operations. Rather, Plaintiffs have asserted claims against Mr. Hollings for trademark infringement, unfair competition and cybersquatting arising out of Mr. Hollings creation of the website www.know-more-secrets.com (the "Know More Website"), a website which, according to Plaintiffs' own complaint, was launched after Defendant Hollings' alleged engagement on The Secret Website had terminated. Further, as demonstrated by Mr. Hollings' affidavit, the Know More Website was created in Arizona from his home. Exhibit B, ¶22. In addition, any websites, URLs, or domain names which Mr. Hollings created, were also created out of his Arizona home. Id. at ¶23. Mr. Hollings' sole (and limited) contacts with Illinois[4] were to discuss The Secret Website and its operations. As none of the claims within Plaintiffs' complaint arise out of The Secret Website or its operations, Plaintiffs have failed to establish personal jurisdiction over Mr. Hollings.

Furthermore, none of the contacts listed in Plaintiffs' complaint were the result of Mr. Hollings' purposeful contact with Illinois. To the contrary, Mr. Hollings negotiated and contracted with Ms. Byrne and her company, Prime Time Products, while Mr. Hollings and Ms. Byrne were in Arizona and Australia respectively. Id. at ¶¶10-12. The terms of their relationship was defined through these dealings. Further, Mr. Hollings' originally submitted his invoices to Prime Time Products and received payment from Prime Time Products. Id. at ¶16. All of the negotiations and agreements surrounding the work that he performed on The Secret website were between him and Rhonda Byrne as well as her company Prime Time Products. Id.

Mr. Hollings performed all of his work associated with The Secret website from his home in Arizona. Id. at ¶13. It was only sometime after Mr. Hollings had been engaged and begun

---

[4]Mr. Hollings contacts relating to The Secret website were not directed to Illinois, but were in response to the initial inquiries and discussions with Ms. Byrne in Australia and California. Exhibit B, ¶¶9-13.

receiving payment, that Ms. Byrne unilaterally decided to hire Bob Rainone in Illinois and establish an office in Illinois for The Secret. *Id.* at ¶¶14, 18. At that point, Ms. Byrne began including Mr. Rainone on correspondence and instructed Mr. Hollings to do the same. Further, Mr. Rainone and Ms. Byrne directed Mr. Hollings to begin submitting his invoices and correspondence to the Illinois office. *Id.* at ¶¶17-18.

Mr. Hollings is not subject to specific jurisdiction in Illinois because none of his minimal contacts with the state, even as stated in Plaintiff's Complaint, were either purposeful or related to the claims in the Complaint. Rather, the claims in the complaint arise solely out of alleged conduct that took place in Arizona. Further, the contacts set forth in the complaint were made solely under the direction and instructions of Plaintiff, their CEO and Ms. Byrne. As such, Mr. Hollings is not subject to personal jurisdiction in Illinois.

### 3. The Court lacks personal jurisdiction over WebServices.

As with the other defendants, this Court lacks personal jurisdiction over Defendant WebServices because WebServices does not have sufficient contacts with the State of Illinois. WebServices is an Arizona corporation wholly owned by Dan Hollings with its sole place of business in Arizona. Exhibit C, ¶¶3-4. WebServices was established by Mr. Hollings per the instructions of Bob Rainone, well after Mr. Hollings had been engaged by Ms. Byrne to prepare The Secret's website, in order to receive Mr. Hollings' payments for his services. *Id.* at ¶5. WebServices does not solicit business in Illinois and does not receive material revenue from Illinois. *Id.* at ¶¶11-12. WebServices does not own, rent or maintain an office in Illinois, or hold any bank accounts in Illinois. *Id.* at ¶¶8-9. WebServices does not have any employees in Illinois. *Id.* at ¶10. WebServices does not send marketing materials to Illinois. *Id.* at ¶13. WebServices has not entered into any contract in Illinois with the Plaintiffs, Rhonda Byrne, Bob Rainone, or The Secret, LLC. *Id.* at ¶14. Furthermore, WebServices' lack of contacts with the State of Illinois is demonstrated by the fact that Plaintiffs have failed to make any allegations within their complaint regarding WebServices' contacts with Illinois sufficient to confer jurisdiction.

In order to have personal jurisdiction over WebServices, Plaintiff must show either that WebServices' contacts with Illinois are sufficiently continuous and systematic so as to confer general jurisdiction or that WebServices has contacts with Illinois and that the claims in this lawsuit arose out of said contacts. Plaintiff cannot make that showing. In fact, Plaintiff has

failed to raise any allegations regarding WebServices alleged contacts with Illinois. As with Loretta Hollings, WebServices is not even mentioned in the portion of the Complaint entitled "Jurisdiction and Venue". However, as demonstrated by the Affidavit submitted herewith, WebServices only contacts with Illinois are the invoices which were submitted pursuant to instructions from Plaintiffs for services performed on The Secret Website. *Id.* at ¶6. As the invoices were submitted pursuant to Plaintiff's instructions, these contacts should not be considered "purposeful" so as to confer jurisdiction.

Further, the only allegations asserted by Plaintiffs against WebServices are claims based upon the creation of the Know More Website, not The Secret's Website. It is undisputed that the Know More Website was created following the termination of Mr. Hollings relationship with Ms. Byrne, Prime Time Products or The Secret and was established in Mr. Hollings' home in Arizona. Exhibit B, ¶22. As such, WebServices has no contacts with Illinois relating to the claims alleged in the Complaint.

III.    CONCLUSION

Based upon the foregoing, the Court must dismiss the instant lawsuit. None of the Defendants have sufficient contacts with Illinois so as to confer personal jurisdiction under due process standards. Plaintiffs have failed to even allege that Defendants Loretta Hollings or WebServices have contacts with Illinois that would convey personal jurisdiction over them. With respect to Dan Hollings, Plaintiffs have alleged that Mr. Hollings' contacts with Illinois consist solely of emails, telephone calls and a single visit for a purpose unrelated to the alleged misconduct described in the Complaint. None of these contacts are related to the instant litigation, which arises from an entirely separate website admittedly formed after Mr. Hollings' engagement on The Secret Website had ended. Moreover, none of Mr. Hollings' prior contacts were made in a manner that could constitute his purposeful availment of an Illinois forum.

Federal courts have found a lack of personal jurisdiction in cases where the Defendants had far greater contacts with the forum state than these Defendants. The exercise of personal jurisdiction in this case would offend due process and, as such, Defendants request that the court dismiss the instant action.

WHEREFORE, for all of the foregoing reasons, Defendants, Dan Hollings, Loretta Hollings and WebServices, LLC, respectfully request that this Court enter an Order dismissing this case for lack of personal jurisdiction.

Dated: February 6, 2008                Respectfully submitted,

Dan Hollings, Loretta Hollings and
WebServices, LLC

By: s/Robert B. Groholski
Robert B. Groholski
Illinois State Bar No. 6272317
Schwartz Cooper Chartered
180 North LaSalle Street
Suite 2700
Chicago, IL 60601
-and-
Christopher E. Parker *(admitted pro hac vice)*
Georgia Bar No. 512152
Jessica B. Couch *(admitted pro hac vice)*
Georgia Bar No. 141275
Mozley, Finlayson & Loggins LLP
One Premier Plaza, Suite 900
5605 Glenridge Drive
Atlanta, Georgia  30342

*Counsel for Defendants*

# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF ILLINOIS (EASTERN DIVISION)

TS Merchandising Ltd., a British Virgin Islands
corporation, and TS Production LLC, a Hungarian
limited liability company,

              Plaintiffs,

vs.

Dan and Loretta Hollings, Arizona residents, and
Web Services, LLC, an Arizona limited liability
company,

              Defendants.

Case No.  07 C 6518


**AFFIDAVIT OF LORETTA HOLLINGS**


(Assigned to the Hon. Ronald A. Guzman)

### AFFIDAVIT OF LORETTA HOLLINGS

Personally appeared before me, the undersigned officer duly authorized to administer

oaths in the State of Arizona, Loretta Hollings, who, after first being sworn, deposes and says:

1.

I am over the age of twenty-one (21) years, of sound mind, and legally competent to give

this testimony

2.

I have personal knowledge of the facts set forth in this affidavit.

3.

I am a resident of Arizona and have been since 1999.

4.

I do not own, use or possess any property in Illinois.

5.

I am not liable for income or property tax in Illinois.

6.

I do not maintain any bank accounts in Illinois.

7.

I do not maintain an office or telephone number in Illinois.

8.

I am not registered to vote in Illinois.

9.

I have not resided in Illinois over fourteen (14) years.

10.

I have never had any contact with the plaintiffs, Rhonda Byrne, Bob Rainone, or The

Secret, LLC in Illinois or any other location.

11.

I have not traveled to Illinois in over six (6) years.


FURTHER AFFIANT SAYETH NOT.

*Loretta Hollings*
Loretta Hollings

SWORN TO AND SUBSCRIBED
before me this 5th day
of February , 2008.

*Mira De*
Notary Public
My Commission Expires: 12/26/2009

OFFICIAL SEAL
MIRA DE
NOTARY PUBLIC - ARIZONA
PIMA COUNTY
My Comm. Expires Dec. 26, 2009

35

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF ILLINOIS (EASTERN DIVISION)**

| | |
|---|---|
| TS Merchandising Ltd., a British Virgin Islands corporation, and TS Production LLC, a Hungarian limited liability company, | Case No. 07 C 6518 |
| Plaintiffs, | **AFFIDAVIT OF DAN HOLLINGS** |
| vs. | (Assigned to the Hon. Ronald A. Guzman) |
| Dan and Loretta Hollings, Arizona residents, and Web Services, LLC, an Arizona limited liability company, | |
| Defendants. | |

### AFFIDAVIT OF DAN HOLLINGS

Personally appeared before me, the undersigned officer duly authorized to administer oaths in the State of Arizona, Dan Hollings, who, after first being sworn, deposes and says:

1.

I am over the age of twenty-one (21) years, of sound mind, and legally competent to give this testimony

2.

I have personal knowledge of the facts set forth in this affidavit.

3.

I am a resident of Arizona and have been since 1999.

4.

I do not own, use or possess any property in Illinois.

5.

I am not liable for income or property tax in Illinois.

6.

I do not maintain any bank accounts in Illinois.

7.

I do not maintain an office or telephone number in Illinois.

8.

I am not registered to vote in Illinois.

9.

The negotiations surrounding my work on The Secret website started in 2005.

10.

All of the negotiations and agreements surrounding the work that I performed on The Secret website were between me and Rhonda Byrne as well as her company Prime Time Products.

11.

Ms. Byrne represented that she was in the course of producing a movie called The Secret and solicited my help in setting up The Secret's website, orchestrating an internet marketing campaign and overseeing internet activities such as customer support, fulfillment and programming for The Secret's website.

12.

Our agreement is memorialized in a series of emails between me and Ms. Byrne. At all times during the negotiation of my work on The Secret I was in Arizona and Ms. Byrne was in either Australia or California.

13.

I performed all of my work associated with The Secret website from my home in Arizona.

14.

In late 2005, Ms. Byrne and/or Prime Time Products hired Bob Rainone to act as CEO for The Secret. Mr. Rainone's lives in Illinois. Following his retention as CEO, The Secret set up offices in Illinois.

15.

By the time The Secret had established offices Illinois, I had already been retained and I had already begun my work on The Secret website and internet project.

16.

I did not have a contractual relationship, nor was I engaged by The Secret. Rather, my work was negotiated with and performed for Rhonda Byrne and Prime Time Products.

17.

After Mr. Rainone was hired, he instructed me to submit my monthly invoices for my work to The Secret at its offices in Illinois, which I did per his instructions.

18.

I never initiated any working relationship with Mr. Rainone or any employees of The Secret's Illinois office. The fact that I corresponded and sent invoices to Illinois was due to the unilateral decision of Ms. Byrne and Prime Time Products to retain an Illinois company. Pursuant to their instructions, I was required to participate in emails, telephone calls and to direct invoices to Illinois.

19.

I have never visited The Secret's Illinois office.

39

20.

Approximately one month prior to my termination from The Secret, LLC, I was required to attend a one-day meeting at the Chicago O'Hare International Airport in Chicago, Illinois. Bob Rainone, the Chief Executive Officer of The Secret, LLC, was present at this meeting. This meeting was the only occasion in which I traveled to Illinois for anything associated with The Secret.

21.

Other than the meeting discussed in ¶ 12, I have not traveled to Illinois for business or personal reasons within the past six (6) years.

22.

I designed the draft webpage known as www.know-more-secrets.com from my home in Arizona, after my tenure with Ms. Byrne and her company.

23.

Any URLs, domain names or website addresses which I have registered have been registered from my home in Arizona.


FURTHER AFFIANT SAYETH NOT.

_Dan Hollings_

SWORN TO AND SUBSCRIBED
before me this _5th_ day
of _February_, 2008.

_Mira De_

Notary Public
My Commission Expires:


OFFICIAL SEAL
MIRA DE
NOTARY PUBLIC - ARIZONA
PIMA COUNTY
My Comm. Expires Dec. 26, 2009

40

# EXHIBIT C

## IN THE UNITED STATES DISTRICT COURT

### FOR THE NORTHERN DISTRICT OF ILLINOIS (EASTERN DIVISION)

| | |
|---|---|
| TS Merchandising Ltd., a British Virgin Islands corporation, and TS Production LLC, a Hungarian limited liability company, | Case No.  07 C 6518 |
| Plaintiffs, | **AFFIDAVIT OF DAN HOLLINGS AS MANAGING MEMBER OF WEB SERVICES, LLC** |
| vs. | |
| Dan and Loretta Hollings, Arizona residents, and Web Services, LLC, an Arizona limited liability company, | (Assigned to the Hon. Ronald A. Guzman) |
| Defendants. | |

### AFFIDAVIT OF DAN HOLLINGS AS MANAGING MEMBER OF WEBSERVICES

Personally appeared before me, the undersigned officer duly authorized to administer oaths in the State of Arizona, Dan Hollings, who, after first being sworn, deposes and says:

1.

I am over the age of twenty-one (21) years, of sound mind, and legally competent to give this testimony

2.

I have personal knowledge of the facts set forth in this affidavit.

3.

I am the Managing Member and sole owner of WebServices, LLC.

4.

WebServices, LLC is incorporated in the State of Arizona and has its principle place of business in Tucson, Arizona.

42

5.

In 2006, Bob Rainone instructed me to establish an LLC for the purpose of receiving payments for my services in creating and operating The Secret's Website. Pursuant to his instructions, I established WebServices, LLC.

6.

WebServices, LLC's only contacts with Illinois were the invoices which were sent to The Secret's Illinois office, pursuant to the instructions from Mr. Rainone, during the later months of my work on The Secret's website.

7.

WebServices, LLC has not had any contact with Illinois relating to the website www.know-more-secrets.com. The only conversations that WebServices has had with Ms. Byrne, Mr. Rainone or Plaintiffs relating to this website occurred while all parties were in Arizona.

8.

WebServices, LLC does not own, rent or maintain an office in Illinois.

9.

WebServices, LLC does not maintain any bank accounts in Illinois.

10.

WebServices, LLC does not have any employees in Illinois.

11.

WebServices, LLC does not conduct or solicit any business in Illinois.

12.

WebServices, LLC does not derive substantial revenue from within the State of Illinois.

13.

WebServices, LLC does not send marketing materials to Illinois.

14.

WebServices, LLC has not entered into any contract in Illinois with the plaintiffs,

Rhonda Byrne, Bob Rainone or The Secret, LLC.

FURTHER AFFIANT SAYETH NOT.

_____
Dan Hollings
Managing Member of Web Services, LLC

SWORN TO AND SUBSCRIBED
before me this _____5ᵗʰ_____ day
of _____February_____, 2008.

_____
Notary Public
My Commission Expires: 12/26/2009

OFFICIAL SEAL
MIRA DE
NOTARY PUBLIC - ARIZONA
PIMA COUNTY
My Comm. Expires Dec. 26, 2009

44

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DREW HERIOT and
DREW PICTURES PTY LTD.,

        Plaintiffs,

        vs.

RHONDA BYRNE, THE SECRET LLC
(AKA TS HOLDINGS LLC), PRIME TIME
US INC., TS PRODUCTION HOLDINGS
LLC, TS PRODUCTION LLC,
TS MERCHANDISING LTD., and
ROBERT E. RAINONE, JR.,

        Defendants.

Civil Case No. 08CV2272

The Honorable Suzanne B. Conlon

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY PROCEEDINGS**

David S. Elkins
Joseph A. Meckes
Joseph P. Grasser
SQUIRE, SANDERS & DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA  94304-1043
Telephone:  (650) 856-6500
Facsimile:  (650) 843-8777

Jack J. Carriglio
James G. Arigionis
MECKLER BULGER & TILSON
123 North Wacker Drive, Suite 1800
Chicago, IL  60606
Telephone:  (312) 474-7900
Facsimile:  (312) 474-7898

Attorneys for Defendants
RHONDA BYRNE, TS RER LLC
(erroneously named as "THE SECRET LLC"
and "TS HOLDINGS LLC"), PRIME TIME
US INC., TS PRODUCTION HOLDINGS
LLC, TS PRODUCTION LLC,
TS MERCHANDISING LTD., and
ROBERT E. RAINONE, JR.

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ............................................. 1

II.    FACTUAL AND PROCEDURAL BACKGROUND ...................................................... 1

III.    ARGUMENT ...................................................................................................... 4

    A.    The Court Should Dismiss This Action For Forum Non Conveniens ................... 4

        1.    The Law Governing Forum Non Conveniens ...................................... 4

        2.    The Federal Court Of Australia Is Both An Available And
                Adequate Alternative Forum ............................................................ 5

        3.    The Private Interest Factors Weigh in Favor of Dismissal ....................... 6

            a.    The Key Witnesses And Evidence Are Located In Australia .......... 6

            b.    Plaintiffs' Choice Of Forum Is Not Entitled To Deference .......... 7

        4.    The Public Interest Factors Weigh In Favor Of Dismissal ....................... 7

            a.    Copyright Ownership Here Is Governed By Australian Law .......... 7

            b.    Other Public Interests Weigh Heavily In Favor Of Dismissal ....... 10

    B.    This Court Should Dismiss Or Stay This Action Based On The Pendency
        Of The Prior, Parallel Action In Australia ........................................... 11

        1.    The Law Governing Abstention ...................................................... 11

        2.    All Abstention Criteria Are Met Here ................................................ 12

    C.    Because Heriot Pleads No Claim In His Own Right, He Lacks Standing
        To Sue And All Of His Claims Must Be Dismissed ................................... 13

    D.    Plaintiffs Plead No Claims Against Robert Rainone ................................... 14

IV.    CONCLUSION ................................................................................................. 15

## TABLE OF AUTHORITIES

Page

### FEDERAL CASES

*Bell Atl. Corp. v. Twombly,*
  __ U.S. __, 127 S. Ct. 1955 (2007) ................................................................................13

*Chelios v. Nat'l Hockey League Players' Ass'n,*
  2007 U.S. Dist. LEXIS 4260 (N.D. Ill., Jan. 18, 2007) ......................................................7

*In re Chicago Flood Lit.,*
  819 F. Supp. 762 (N.D. Ill 1993) ................................................................................12

*Colorado River Conservation District v. U.S.,*
  424 U.S. 800 (1976) ................................................................................................11

*Dae Han Video Prod., Inc. v. Dong San, Chun,*
  1990 U.S. Dist. LEXIS 18496 (E.D. Va. 1990) ................................................................8

*EEOC v. Concentra Health Care Servs., Inc.,*
  496 F.3d 773 (7th Cir. 2007) ......................................................................................13

*Films by Jove, Inc. v. Berov,*
  154 F. Supp. 2d 432 (E.D.N.Y. 2001) ............................................................................8

*Finova Cap. Corp v. Ryan Helicopters U.S.A., Inc.,*
  180 F.3d 896 (7th Cir. 1999) ................................................................................11, 12

*ISI Int'l, Inc. v. Borden Ladner Gervais,*
  2001 U.S. Dist. LEXIS 18202 (N.D. Ill. Nov. 6, 2001) ....................................................10

*Ingersoll Milling Mach. Co. v. Granger,*
  833 F.2d 680 (7th Cir. 1987) ......................................................................................11

*Itar-Tass Russian News Agency v. Russian Kurier*
  153 F.3d 82 (2d Cir. 1998) ......................................................................................7, 8

*Jackson v. E.J. Brach Corp.,*
  176 F.3d 971 (7th Cir. 1999) ......................................................................................13

*Kamel v. Hill-Rom Co., Inc.,*
  108 F.3d 799 (7th Cir. 1997) ..............................................................................4, 7, 10

*Piper Aircraft Co. v. Reyno,*
  454 U.S. 235 (1947) ..................................................................................................5

*Royal Sun Alliance Ins. of Canada v. Century Int'l Arms, Inc.,*
  466 F.3d 88 (2d Cir. 2006) ..........................................................................................11

## TABLE OF AUTHORITIES
## CON'T

                                                                    **Page**

*Valinote v. Ballis,*
    295 F.3d 666 (7th Cir. 2002) ............................................................14

### FEDERAL STATUTES

17 U.S.C. §101..............................................................................................9

17 U.S.C. §501..............................................................................................9

### MISCELLANEOUS

*Nimmer On Copyright* (2007)................................................................8, 14

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT.

The movie *The Secret* has become a phenomenon worldwide, but it was conceived, produced, substantially filmed, edited, finished and initially published in Australia, by an Australian production company using Australian crews and equipment and intended for broadcast on Australian television.  Plaintiff Drew Pictures Pty Ltd. ("Drew Pictures"), an Australian corporation, seeks a declaration that the contributions of its Australian shareholder (plaintiff Drew Heriot) to the movie *The Secret* gives Drew Pictures ownership rights in the movie and its derivative works (collectively the "Works").  Because plaintiffs present issues that are properly decided by the Federal Court of Australia—before which the same issues have been litigated by virtually the same parties since October 2007—the Court should dismiss this action.

Whether Drew Pictures has any rights in *The Secret* has been the subject of litigation in Australia for over seven months (the "Australian Action").  Cmplt. ¶57.  Because Australia has the closest relationship to the central facts and is the country whose law will apply to resolution of the critical issues, the Court should dismiss plaintiffs' Complaint for *forum non conveniens*.  Alternatively, the Court should dismiss or stay this action pending the outcome of the Australian Action under the abstention doctrine because the latter is a pending "parallel action" that will most efficiently determine the issues alleged by plaintiffs in their Complaint.

Finally, Heriot's claims should be dismissed.  Plaintiffs allege that Drew Pictures, not Heriot, is the owner of the copyright at issue.  He thus lacks standing.  The Court should also dismiss all claims against Robert Rainone; he is alleged to be nothing more than a shareholder or member of the companies accused of infringement.

## II.    FACTUAL AND PROCEDURAL BACKGROUND.

Rhonda Byrne, an Australian television producer, conceived *The Secret* in 2004, envisioning it as a documentary series for Australian television.  Cmplt. ¶¶19-20.  At that time, Heriot was working for Byrne's Australian production company, Prime Time Productions Holdings Pty. Ltd. ("PTP"), directing various shows for broadcast on Australian TV.  *Id.* ¶¶16-18.  Heriot worked full time for PTP under a Consultancy Agreement among PTP, Drew Pictures

- 1 -

and Heriot governed by Australian law. *Id.* ¶18; Harrington Decl. Ex. A ¶8. Even after the time

plaintiffs contend the Consultancy Agreement lapsed in October 2004, Heriot continued to work

full time at PTP under Byrne's direction and, throughout the time he worked on *The Secret,* PTP

continued to pay for those services. Cmplt. ¶22; Harrington Decl. ¶5.

Plaintiffs allege that for the next "several months," Heriot worked on the concept of *The

Secret* in Australia together with Ms. Byrne and another Australian, Paul Harrington. Cmplt.

¶21. Heriot and the other members of the PTP team always understood that *The Secret*—

whether as a series or television special—was intended for broadcast on Australian television

pursuant to a Commission Agreement with the Australian Nine Network. Cmplt. ¶¶16-18, 26,

33; Harrington Decl. ¶6. Indeed, the Commission Agreement expressly required that *The Secret*

qualify as an "Australian program" under Australian Broadcast Authority guidelines. Harrington

Decl. ¶6. Heriot made all of his alleged initial contributions to *The Secret*, including the so-

called "Rundowns" and "Questions for Interview Subjects," while physically located in

Australia. Cmplt. ¶¶21-25, 29-30.

After detailed preparation for filming was completed in Australia, Heriot, Byrne and an

Australian film crew traveled to the United States to film some of the interviews to be used in

*The Secret.* Cmplt. ¶¶27-29; Harrington Decl. ¶7. Of the over 120 persons who worked as

crewmembers on *The Secret*, only about twelve were Americans (principally technicians,

caterers and makeup artists). Harrington Decl. ¶9. Similarly, out of about one hundred cast

members, eighty percent or so were Australians filmed in Australia. *Id.* ¶11. Filming in the U.S.

consumed a total about twenty work days. *Id.* ¶8. All told, American cast and crew members

contributed about 51 total work days, compared to over *3,000* work days contributed by

Australians. *Id.* ¶12. Because *The Secret* was intended for Australian television, all filming was

done on equipment that used the "PAL" standard used in Australia (the "NTSC" standard is used

in the U.S). *Id.* ¶13.

Heriot was in the U.S. for only eleven of the twenty filming days here. *Id.* ¶8. Before

filming in the U.S. was complete, Heriot was instructed to return to Australia to help begin "the

- 2 -

process of editing the documentary." Cmplt. ¶29; Harrington Decl. ¶8. Plaintiffs contend that

from August 2005 to January 2006, Heriot and others worked in Australia to complete the film.

Cmplt. ¶¶29-32.

In January 2006—after virtually all of Heriot's alleged contribution to *The Secret* was

finished—Nine Network decided to defer broadcasting *The Secret*. Cmplt. ¶¶33-34. It was

decided to allow distributors "release *The Secret* as a DVD and to sell streaming versions on the

internet." *Id.* ¶33. Plaintiffs contend that Heriot worked with another Australian, Marc

Goldenfein, and Vividas Pty. Ltd., an Australian company ("Vividas"), "to develop an internet

distribution model" for the film.[1] *Id.* Vividas was, in fact, hired to convert the film to a format

that could be streamed over the Internet. PTP delivered the master tapes for *The Secret* and later

for *The Secret* (extended edition) to Vividas in Melbourne, Australia; Vividas converted the

films as planned. Harrington Decl. ¶15.

*The Secret* was first shown in its substantially finished form in Australia in November

2005, at screenings for Nine Network executives in Melbourne. Harrington Decl. ¶17. PTP

employees in Australia were also given VHS copies of *The Secret*, which were played at multiple

private screenings in Australia in January 2006, including private screenings hosted by Heriot

himself. *Id.* ¶18. Beginning in March 2006, *The Secret* was made available worldwide for retail

viewing over the Internet (using the Vividas technology) for a small fee. Cmplt. ¶37. DVDs of

the movie were offered for sale shortly thereafter. *Id.*

Before the movie's DVD and Internet distribution, PTP transferred its rights in *The*

*Secret* to Byrne, and she transferred her interest to defendant TS Production LLC ("TS

Production"). Rainone Decl. ¶8. In May 2006, TS Production engaged Prime Time US Inc.

("PTUS") to create a book based on *The Secret,* and later engaged PTP to create an extended

version of the movie. *Id* ¶9. TS Production registered its copyrights in the book and *The Secret*

(extended edition). *Id.* Because *The Secret* (extended edition) quickly replaced the original,

---

[1] Marc Goldenfein is a citizen and resident of Australia. Harrington Decl. ¶16. While Heriot did not have
substantial contact with Vividas, any contact he did have would have been solely in Australia. *Id.*

- 3 -

neither PTP nor TS Production sought immediate copyright registration in the U.S. for the original version. *Id.* TS Production licensed rights to the book to Simon & Schuster and licensed rights to film versions of *The Secret* to TS Merchandising Ltd. and other distribution companies. *Id.* PTP still has at its Melbourne headquarters nearly all raw film footage, edits, transcripts and other documents and materials used in making *The Secret.* Harrington Decl. ¶20.

In September 2007, TS Production learned that Drew Pictures had sought U.S. copyright registration for the original version of *The Secret.* Rainone Decl. ¶2. In response to a letter from TS Production, Drew Pictures argued through its lawyers that, as a matter of *Australian* copyright law, Drew Pictures was a co-owner of the screenplay and any derivative works. *Id* Ex. A. TS Production promptly filed suit in Australia over seven months ago, on October 18, 2007, to determine its ownership of all rights to *The Secret. Id.* Ex. B. Throughout those proceedings, Drew Pictures and Heriot have contended that their rights derive from Australian law and have informed the Australian court that they intended to assert cross-claims against TS Production arising under Australian law. *Id.* Exs. A and D¶33.

## III.   ARGUMENT.

### A.   THE COURT SHOULD DISMISS THIS ACTION FOR *FORUM NON CONVENIENS.*

"The principle of *forum non conveniens* comes down to this: a trial court may dismiss a suit over which it would normally have jurisdiction if it best serves the convenience of the parties and the ends of justice." *Kamel v. Hill-Rom Co., Inc.*, 108 F. 3d 799, 802 (7th Cir. 1997). The convenience of the parties and the ends of justice are best served here by having these predominantly Australian parties litigate their predominately Australian dispute over the ownership of *The Secret*—an issue governed by Australian law—in Australia, where they in fact have been litigating the same issue in earnest since October 2007.

### 1.   THE LAW GOVERNING FORUM NON CONVENIENS.

Under the *forum non conveniens* doctrine, "a trial court may dismiss a suit over which it would normally have jurisdiction if it best serves the convenience of the parties and the ends of justice." *Id.* In deciding a motion to dismiss based on *forum non conveniens*, the Court must

- 4 -

first determine whether an adequate alternative forum exists. If so, the Court must then

determine whether the private and public interest factors warrant dismissal. *Id.* at 802-803.

An alternative forum must be both (i) available and (ii) adequate. *Id.* at 802 (citation

omitted). A "forum is available if all parties are amenable to process and are within the forum's

jurisdiction." *Id.* at 803. A "forum is adequate when the parties will not be deprived of all

remedies or treated unfairly." *Id.* Once a court determines that an alternative forum exists, it

must then balance private and public interest factors to determine whether dismissing the case

will "best serve[] the convenience of the parties and the ends of justice." *Id.* at 802-803. The

"private factors" and "public factors" to be weighed are as follows:

| Private Factors | Public Factors |
|---|---|
| • Ease of access to sources of proof;<br>• Availability of compulsory process for the attendance of unwilling witnesses;<br>• The cost of obtaining the attendance of willing witnesses;<br>• The possibility of viewing the premises, if necessary; and<br>• All other practical problems that make trial of a case easy, efficient and economical. | • Court congestion;<br>• The local interest in having localized disputes decided at home;<br>• The interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action;<br>• The avoidance of unnecessary problems in conflicts of laws or in the application of foreign law; and<br>• The unfairness of burdening citizens in an unrelated forum with jury duty. |

*Id.* at 803 (citations omitted). The Supreme Court has "repeatedly emphasized the need to retain

flexibility" in considering these factors, without emphasis on any single factor. *Piper Aircraft*

*Co. v. Reyno*, 454 U.S. 235, 249-50 (1947).

2.    **THE FEDERAL COURT OF AUSTRALIA IS BOTH
AN AVAILABLE AND ADEQUATE ALTERNATIVE FORUM.**

Australia is an available forum because the principal parties in this action are already

litigating the same issues there. As plaintiffs recently stated through counsel, their Complaint

here "raises the same issues for determination as were raised" by TS Production in the Australian

Action last October. Rainone Decl. Ex. F ¶5(c). Moreover, in February 2008, counsel told the

Australian court that plaintiffs had "instructed" them to prepare a cross-claim in Australia against

TS Production and Byrne, alleging, among other things, infringement of Drew Pictures' alleged

copyright to the Works as a matter of Australian law. *Id.* Ex. D ¶33. Neither Heriot nor Drew

Pictures has ever claimed that the Australian court is not competent to rule on these issues or that

it lacks jurisdiction over them. Moreover, all defendants here agree to be subject to personal

jurisdiction in Australia for purposes of resolving the parties' dispute, and have authorized TS

Production's Australian counsel to accept service on their behalf. Rainone Decl. ¶10-12; Byrne

Decl. ¶2-3; Zyck Decl. ¶2-3.

Australia is also an adequate forum. Plaintiffs can seek the same relief in Australia,

another common law country, as asserted here.

### 3.    THE PRIVATE INTEREST FACTORS WEIGH IN FAVOR OF DISMISSAL.

#### a.    The Key Witnesses And Evidence Are Located In Australia.

*The Secret* was conceived, filmed and finished almost entirely in Australia by an

Australian company with an Australian crew using Australian equipment for an Australian

television network. Consequently, virtually all of the dozens of witnesses and voluminous

evidence relevant to Drew Pictures' ownership claim are located in Australia.

Threshold issues regarding Heriot's employment status with PTP, his relative

contribution to *The Secret* and the parties' alleged intent that Heriot be considered a co-creator

will require testimony from employees of PTP (who currently reside in Australia), the Australian

film crews and other contributors who worked alongside Heriot while filming *The Secret*. This

would include literally dozens of creative crew members who reside in Australia, who are not

employed by any party and who are not subject to compulsory process in this Court.

Moreover, all of the raw footage filmed by PTP in the production of *The Secret,* all of the

rough drafts and edits, and all of the documents relevant to Heriot's employment relationship

with PTP are also located in Australia. Allowing the action to go forward here will create a

logistical quagmire, requiring defendants to obtain voluminous records and testimony from half a

world away, at enormous expense, simply to rebut Drew Pictures' spurious claim of ownership

in *The Secret*—an an issue that is already properly before an Australian court.

       b.     **Plaintiffs' Choice Of Forum Is Not Entitled To Deference.**

Drew Pictures is an Australian company with its principal place of business in Ivanhoe, Victoria, Australia. Cmplt. ¶2, Harrington Decl. ¶4. Heriot is an Australian national who claims to have moved to Southern California after "Byrne told Heriot to come to the United States on an I Visa sponsored by Prime Time" *after* his alleged role in creating *The Secret* was complete. Cmplt. ¶¶ 1, 36. As both plaintiffs are Australian citizens, and neither is present in this District, their choice of this forum is accorded little or no deference. *Chelios v. Nat'l Hockey League Players' Ass'n*, 2007 U.S. Dist. LEXIS 4260, *15 (N.D. Ill., Jan. 18, 2007). In any event, as shown in Section III.C. below, Heriot has not alleged a valid claim against any defendant, making his presence in California irrelevant in analyzing deference to choice of forum.

       4.     **THE PUBLIC INTEREST FACTORS WEIGH IN FAVOR OF DISMISSAL.**

       a.     **Copyright Ownership Here Is Governed By Australian Law.**

In analyzing the *forum non conveniens* public factors, the Court should avoid "unnecessary problems in conflicts of laws or in the application of foreign law" and try to ensure the case proceeds "in a forum that is at home with the law that must govern the action." *Kamel*, 108 F. 3d at 802-803. Here, Drew Pictures' claims that it owns or co-owns all or parts of *The Secret* will be governed by Australian law.[2]

The leading authority on choice of law for international disputes over copyright ownership holds that the laws of the country with the most significant relationship to the creation of the work govern disputes over ownership of the work. *Itar-Tass Russian News Agency v. Russian Kurier*, 153 F.3d 82, 89-90 (2d Cir. 1998). In a matter of first impression, the *Itar-Tass* court observed that "[c]hoice of law issues in international copyright cases have been largely ignored in the reported decisions and dealt with rather cursorily by most commentators." *Id.* at 88. The court thus approached its conflicts of law analysis methodically, first looking to Congress's Berne Convention Implementation Act of 1988, which amended the Copyright Act to

---

[2] Although plaintiffs allege that Drew Pictures' ownership claim is a matter of U.S. copyright law (*see* Complaint ¶¶61-63), they previously admitted that Drew Pictures' ownership rights in *The Secret*, if any, are a matter of Australian law. *See* Rainone Decl. Exs. A and D ¶33.

provide that "[n]o right or interest in a work eligible for protection under this title may be claimed by virtue of . . . the provisions of the Berne Convention . . . . Any rights in a work eligible for protection under this title that derive from this title . . . shall not be expanded or reduced by virtue of . . . the provisions of the Berne Convention."[3]  *Id.* at 90 (quoting 17 U.S.C. §104(c)).  In other words, the court ruled that a putative copyright owner could not have rights he would not otherwise have by virtue of this country's adoption of the Berne Convention other than those that previously existed under the Copyright Act generally.[4]  The *Itar-Tass* court then determined, however, that the Copyright Act does not specify which law should apply to the determination of copyright ownership when a work is created overseas but protection is sought here.  *Id.*; *accord*, Melvin D. Nimmer, *Nimmer On Copyright* (2007) ("Nimmer") §17.05.

Consequently, *Itar-Tass* held that federal common law determines what law should apply. 153 F.3d at 90.  Noting that "copyright is a form of property," the court applied the "usual rule . . . that the interests of the parties in property are determined by the law of the state with 'the most significant relationship' to the property and the parties."  *Id.* (citing Rest. 2d Conflict of Laws §222).  Thus, under federal common law, a court must apply the "most significant relationship" test to determine initial ownership of copyright.  *Itar-Tass*, 153 F.3d at 90-91; *Films by Jove, Inc. v. Berov*, 154 F. Supp. 2d 432, 448 (E.D.N.Y. 2001) (applying Russian law to determine initial ownership of animated films made in Russia); *Dae Han Video Prod., Inc. v. Dong San, Chun*, 1990 U.S. Dist. LEXIS 18496, *9 n.3 (E.D. Va. 1990) (applying Korean law to determine that licensor lacked rights in Korean television shows).

---

[3] The United States and Australia are parties to the Berne Convention for the Protection of Literary and Artistic Works ("Berne Convention").  The Berne Convention requires equal recognition of copyrights among signatory nations, gives minimum levels of protection for copyright holders and provides for the automatic existence of copyrights without the requirement of registration (though the U.S. requires registration as a prerequisite to enforce a copyright in district court and to obtain statutory damages.)

[4] Article 14*bis* section 2(a) of the Berne Convention gave signatory states the option of legislating ownership of copyrights in movies:  "Ownership of copyright in a cinematographic work shall be a matter for legislation in the country where protection is claimed."  Berne Convention (Paris Text, 1971).  Unlike Australia, the U.S. never enacted such legislation.

Australia is the country with the most significant relationship to the property and the parties here. *The Secret* was conceived in Australia by Byrne, an Australian citizen then residing in Australia. *The Secret* was produced by PTP, an Australian company. The vast majority of the film crew—including Heriot—were Australian citizens residing in Australia. Drew Pictures, which claims ownership of *The Secret,* is an Australian company based in a Melbourne suburb.[5] Drew Pictures, Heriot and PTP were parties to a Consultancy Agreement entered into in Australia and governed by Australian law. Harrington Decl. ¶4, Ex. A. Australia is the locale of almost all work on *The Secret*; of the twelve months of its production time during which plaintiffs claim Heriot contributed to *The Secret,* only a few days were spent by crewmembers working outside of Australia.

Plaintiffs acknowledge that Heriot's various alleged contributions—including the promotional trailers, the "Rundowns," the "Questions for Interview Subjects," the "2hr Paper Edit," the "tranSCRIPT" and various other "creations"—*all* occurred in Australia, not the United States. Cmplt. ¶¶22, 24, 25, 29, 30. Heriot himself only participated in eleven of the twenty filming days in the U.S. Harrington Decl. ¶8. Moreover, from the beginning Heriot believed that the work being produced was intended for broadcast in Australia—like every other project Heriot had worked on for PTP. Cmplt. ¶¶16-18, 26; Harrington Decl. ¶6. PTP first published *The Secret* to Australian audiences in Australia. *Id.* ¶¶17-18. Australia is unquestionably the country with the "most significant relationship" to the creation of *The Secret.*

---

[5] If, as TS Production submits in the Australian Action, Heriot is a *de facto* employee of PTP, any contributions he made would be deemed a work made for hire, leaving Drew Pictures without a claim—whether the law of Australia or the U.S. applies. *See* 1 Sherman, Lahore. et al., INTERNATIONAL COPYRIGHT LAW & PRACTICE, Australia, (2007) §4[1][b][i][A] at AUS-43 and §4[1][b][ii][B] at AUS-46 (noting that in Australia ownership of a literary work (e.g., a book) is held by the employer while ownership of a film is held by the "maker," i.e., the production company.); 17 U.S.C. §101 (defining "work made for hire" as, among other things, "a work prepared by an employee within the scope of his or her employment.").

Because Australian law will determine whether Drew Pictures has any rights to *The Secret*, this factor weighs heavily in favor of dismissal.[6] "To ensure a correct application of [another country's] law, this court should not 'delve into the tenets of an unfamiliar legal system.'" *ISI Int'l, Inc. v. Borden Ladner Gervais,* 2001 U.S. Dist. LEXIS 18202, *10 (N.D. Ill. Nov. 6, 2001) (quoting *Kamel,* 108 F.3d at 805). Given that the Australian court already has jurisdiction over these same parties for what are admittedly the "same issues," the same reasoning applies here with even greater force.

              **b.**      **Other Public Interests Weigh Heavily In Favor Of Dismissal.**

Other "public factors" include consideration of the relative congestion of the two courts, the existence (or non-existence) of any local interest in the case, and whether local juries should be burdened with deciding the parties' dispute. Here, each factor weighs in favor of dismissal.

First, the courts of this District are far more congested than the Federal Court of Australia, where the earlier action involving what are admittedly the "same issues" is now pending. Each district judge in this District has an average docket of 368 pending cases. Meckes Decl. Ex. A. The Federal Court of Australia is much less congested, averaging about 66 cases per judge. *Id.* ¶3, Ex. B at 89. The courts' relative levels of congestion are reflected in the relative durations of cases in each court from commencement to disposition. Cases in this District take about 2.5 years to get to trial, while 65% of cases in the Australian Federal Court are resolved within six months and 83.8% of cases are resolved within one year. *Id.* at 93. Only 5.7% of the cases in Australian courts last longer than two years. *Id.*

Second, Illinois has *no* interest in determining the central issue of this case: whether Drew Pictures—a foreign corporation with no operations in or apparent contacts with this state—co-owns a film conceived and produced in Australia for broadcast on Australian television. Juries in this District should not be burdened with such a dispute, particularly when a proceeding

---

[6] Plaintiffs brought their case in this forum, rather than as a cross-claim in Australia, because as a matter of Australian law the copyright to a film is owned by the producer of a film—here PTP.
1 INTERNATIONAL COPYRIGHT LAW & PRACTICE, Australia (2007) §4[1][b][ii][B] at AUS-46 (citing Australia Copyright Act of 1968 ("C.A.") §§22(4) and 98(1)-(2)).

involving the very "same issues" and substantially the same parties has been pending for over seven months in the Australian Federal Court. Australia, meanwhile, has a substantial interest in ensuring that its citizens' rights in films and other works created by Australian citizens in Australia are afforded the protections provided under Australian law.

Because Australia is not only an adequate alternative forum, but also the forum that will be most convenient to all of the parties and witnesses, this Court should dismiss this action for *forum non conveniens.*

### B.     THIS COURT SHOULD DISMISS OR STAY THIS ACTION BASED ON THE PENDENCY OF THE PRIOR, PARALLEL ACTION IN AUSTRALIA.

#### 1.     THE LAW GOVERNING ABSTENTION.

Permitting the Australian Action to run its course will resolve the central issue here: whether Drew Pictures has any ownership rights in *The Secret.* The Court thus has an independent basis to dismiss or, at a minimum, stay this action under the abstention doctrine.

When parallel proceedings in another state or country involve the same issues, a district court may, "for reasons of wise judicial administration," dismiss an action to ensure due regard for "the conservation of judicial resources and comprehensive disposition of litigation." *Colorado River Conservation District v. U.S.*, 424 U.S. 800, 817-18 (1976). While this issue typically arises "in the context of parallel state proceedings . . . in the interests of international comity, [courts] apply the same general principles with respect to parallel proceedings in a foreign court." *Finova Cap. Corp v. Ryan Helicopters U.S.A., Inc.*, 180 F.3d 896, 898 (7th Cir. 1999) (citing *Ingersoll Milling Mach. Co. v. Granger*, 833 F.2d 680, 685 (7th Cir. 1987)).[7]

Determining abstention requires a two-step analysis. First, the Court must "determine whether the federal and foreign proceedings are in fact parallel." *Finova*, 180 F.3d at 898. "Parallel" does not necessarily mean "identical." *Royal Sun Alliance Ins. of Canada v. Century Int'l Arms, Inc.*, 466 F.3d 88, 94 (2d Cir. 2006). Rather, "[s]uits are parallel if substantially the

---

[7] While the *Colorado River* Court based its decision on the principle of deference to parallel proceedings only after finding that the "case falls within none of the abstention categories" (424 U.S. at 817), such deference is usually called "abstention." *See Finova*, 180 F.3d at 898.

same parties are litigating substantially the same issues simultaneously in two fora." *Finova*, 180

F.3d at 898 (citation omitted); *In re Chicago Flood Lit.,* 819 F. Supp. 762, 764 (N.D. Ill 1993)

("identity of parties in both forums" is not needed for the action to be parallel).

If the two actions are parallel, the Court's "next task is to balance the considerations that

weigh in favor of, and against, abstention." *Finova*, 180 F.3d at 898. The Seventh Circuit has

considered several:

> (1) the identity of the court that first assumed jurisdiction over the
> property; (2) the relative inconvenience of the federal forum;
> (3) the need to avoid piecemeal litigation; (4) the order in which
> the respective proceedings were filed; (5) whether federal or
> foreign law provides the rule of decision; (6) whether the foreign
> action protects the federal plaintiff's rights; (7) the relative progress
> of the federal and foreign proceedings; and (8) the vexatious or
> contrived nature of the federal claim.

*Finova*, 180 F.3d at 898-899 (citations omitted).

### 2.   ALL ABSTENTION CRITERIA ARE MET HERE.

All criteria are satisfied here. As a threshold matter, this action is parallel to the

preexisting one in Australian Federal Court. Plaintiffs have admitted in the Australian Action

that each case shares the same principal issue: whether Drew Pictures holds any property rights

in *The Secret*. Rainone Decl. Ex. F. Although plaintiffs added defendants to this action who are

not named parties in the Australian action—Rhonda Byrne, TS Merchandising, TS Production

Holdings, PTUS and Robert Rainone—each is collateral to the principal issue in dispute. Their

joinder does not affect the parallel nature of these actions. *See In re Chicago Flood Litigation,*

819 F. Supp. at 764.

The other factors cited by the Seventh Circuit also cut in favor of abstention. The first

court to assume jurisdiction was the Australian Federal Court. And, as shown in the discussion

of *forum non conveniens*, the Australian Federal Court is also the more convenient forum given

that the vast majority of witnesses and documents are located there. That action has been well

underway for months, with Drew Pictures' and Heriot's active participation. According to

comparative statistics, the forum "Down Under" is less congested and thus faster than this

- 12 -

District. Meckes Decl. ¶¶ 2-3, Exs. A-C. Having the Australian Federal Court determine, under

its own law, the threshold issue of whether Drew Pictures has any ownership right in *The Secret*

will better serve the fair and efficient administration of justice than proceeding with plaintiffs'

claims here. The Court should thus abstain from acting and dismiss this action, or, in the

alternative, stay it pending the outcome of proceedings in Australia.

C.    **BECAUSE HERIOT PLEADS NO CLAIM IN HIS OWN RIGHT, HE LACKS STANDING TO SUE AND ALL OF HIS CLAIMS MUST BE DISMISSED.**

Plaintiffs' allegations demonstrate that Heriot has no claim of his own. Because he lacks

standing to assert claims under a copyright he admits he does not own, the Court should dismiss

each of Heriot's claims under Federal Rule of Civil Procedure ("Rule") 12(b)(6).

Plaintiffs allege that "[a]t all times during the creation of the Works, Heriot was an

employee of Drew Pictures Pty Ltd.," and that "by virtue of its employment of Heriot, Drew

Pictures is the owner of Heriot's interest in the Works." Cmplt. ¶¶1-2. The copyright that

allegedly forms the basis of the Complaint was registered by "Drew Pictures Pty Ltd as the

employer for hire of Drew Heriot, who was the co-author of the screenplay and the director of

the movie." Id. ¶55. Heriot thus does not claim—and cannot claim—any ownership in the

copyrights over the subject works. He therefore lacks standing to bring the claims he asserts.

On a Rule 12(b)(6) motion, the Court must accept as true all well-pled facts and draw all

reasonable inferences from those facts in favor of the plaintiff. *See Jackson v. E.J. Brach Corp.*,

176 F.3d 971, 977-78 (7th Cir. 1999). A challenged claim must allege "enough facts to state a

claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, __ U.S. __, 127 S. Ct.

1955, 1974 (2007). Heriot must provide enough detail to give defendants fair notice of his

claims and he must show that his claims are plausible—rather than merely speculative—such

that relief is warranted. *EEOC v. Concentra Health Care Servs., Inc.*, 496 F.3d 773, 776 (7th Cir.

2007).

Plaintiffs allege four counts. In Count I, they seek a judicial declaration that Drew

Pictures is a co-owner of the Works and that, therefore, "Defendants have a duty to account to

Plaintiffs for all profits arising, directly or indirectly, from Defendants' exploitation of the Works." Cmplt. ¶68. Alleging that Drew Pictures, but not Heriot, is the owner of the Works is an admission that Heriot has no personal right to any such declaration or any accounting. Count II for "equitable accounting, and Count IV, for "unjust enrichment," fare no better for the same reason. Finally, Count III alleges that Defendants are infringing copyrights purportedly owned by Drew Pictures, not Heriot. *Id.* ¶77. Only "legal or beneficial owner[s]" of copyrights, however, are entitled to bring actions for infringement. 17 U.S.C. §501. Heriot thus has no claim under Count III or any other asserted count.

### D.   PLAINTIFFS PLEAD NO CLAIMS AGAINST ROBERT RAINONE

Plaintiffs name Robert Rainone as a defendant but assert no cognizable claim against him. Plaintiffs allege simply that Rainone "is the recipient of profits" through his ownership interest in various business entities involved in the creation and marketing of *The Secret.* Cmplt. ¶9. Plaintiffs purport that Rainone and others "entered into a scheme to fraudulently transfer intellectual property rights in *The Secret*," and to "defraud Heriot and Drew Pictures of their investment." Cmplt. ¶40. But plaintiffs do not assert fraud or any other tort claims against Rainone or anyone else.[8]

Plaintiffs' putative claims against all "Defendants" collectively allege a right to a declaration of co-ownership of *The Secret*, an accounting, or, in the alternative, damages for copyright infringement and unjust enrichment. These claims fail as to Rainone because he is not alleged to be a co-owner from whom an accounting is available. A putative co-owner of a joint work is only entitled to an accounting from the other co-owner. *See Nimmer* §6.12[b], at 6-38.6 and cited cases ("A right of accounting may be enforced only as against the joint owner-licensor."). Rainone's status as a shareholder or member of entity defendants does not render him co-liable with the entity defendants under the facts alleged. *Valinote v. Ballis*, 295 F.3d 666,

---

[8] Plaintiffs would be required to support their "fraudulent scheme" allegations with the factual specificity required by Rule 9(b) if they actually were attempting to state a claim for fraud. The lack of such specificity shows that these statements are baseless and merely asserted for pejorative effect.

668 (7th Cir. 2002). Nor is he alleged to infringe any of Drew Pictures' alleged copyrights on an individual basis. All claims against Rainone must be dismissed.

## IV.    CONCLUSION

The central issue of this action—Drew Pictures' purported ownership or co-ownership of rights in and to *The Secret*—is, according to plaintiffs, the "same issue" presented for resolution in the earlier-filed Australian Federal Court proceeding. Plaintiffs have actively engaged in that proceeding. Whether Plaintiffs filed the present action to avoid the impact of Australian law (which clearly vests the movie's producer, PTP, with all ownership rights in and to *The Secret*), or whether they filed this action for some other tactical purpose, is unimportant. What is important is that this case meets all of the criteria for dismissal, whether under *forum non conveniens* or the abstention doctrine. If the Court believes dismissal is not warranted, then it should exercise its discretion under the abstention doctrine to stay this case pending the outcome of proceedings in Australia. Finally, in the event the entire action is not dismissed, all claims asserted by Heriot and all claims asserted against Rainone should be dismissed under Rule 12(b)(6).

Dated:  June 4, 2008                    Respectfully submitted,

                                        SQUIRE, SANDERS & DEMPSEY L.L.P.


                                        By:  /s/ David S. Elkins
                                              David S. Elkins